IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLARK MOELLER and            :
JANE MOELLER, et al.,        :
                             :     CIVIL ACTION NO. **3:CV-05-0334**
                             :
            Plaintiffs       :     (Judge Munley)
                             :
            v.               :     (Magistrate Judge Blewitt)
                             :
BRADFORD COUNTY, et al.,     :
                             :
                             :
            Defendants       :

## REPORT AND RECOMMENDATION

The Plaintiffs, Clark and Jane Moeller, Jeffery Gonzalez, Laura Blain, Chris Schwenke and

Tim Thurston, all residents of Bradford County, Pennsylvania, filed this action, through counsel for

Americans United for Separation of Church and State and Pennsylvania American Civil Liberties

Union, on February 17, 2005, seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201 *et*

*seq*. (Doc. 1).  The named Defendants are Bradford County; Carl J. Anderson, (former) Executor

Director of Pennsylvania Commission on Crime and Delinquency ("PCCD"); Alberto Gonzales,

United States Attorney General; and The Firm Foundation of America, d/b/a/ The Firm Foundation

of Bradford County ("FF").  Presently ripe for disposition are the Motion to Dismiss of FF and the

Motion to Dismiss or for Summary Judgment of Defendant Gonzales.[1] **(Docs. 23 and 24)**.[2]

_____

[1]By separate Report and Recommendation, we shall consider the Motion to Dismiss or for Summary Judgment of Defendant Gonzales, Doc. 24.


[2]Remaining Defendants Bradford County and the Current Acting Director of PCCD (formerly Defendant Anderson) filed their Answers to Plaintiffs' Complaint (Docs. 19 & 22,

**I.  Motion to Dismiss Standard.**

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

**II.  Allegations of Complaint**.

The Moeller Plaintiffs, Plaintiff Gonzalez, Plaintiff Blain and Plaintiff Schwenke are residents of Bradford County and taxpayers.  These Plaintiffs object to and are offended by the use of their tax money to finance the FF program at the Bradford County Prison ("BCP") and its "promulgation of its religious beliefs." (Doc. 1, p. 3).  Plaintiff Thurston is a resident of the County and a former inmate of BCP.  During his incarceration, Plaintiff Thurston participated in the FF program in order to obtain vocational training.  It is not alleged that Plaintiff Thurston was also a taxpayer.  (*Id*., p. 4).[3]

---

respectively).  We concur with PCCD that its current Acting Director, Carol L. Lavery, should be automatically substituted pursuant to Fed. R. Civ. P. 25(d)(1) in place of Defendant Anderson, as he no longer holds the Director  position. (Doc. 22, p. 2, n. 1).  We have directed the Clerk of Court to substitute Lavery as a Defendant in place of Anderson. (Doc. 88).

[3]As taxpayers, Plaintiffs Moellers, Gonzalez, Blain and Shwenke have standing to bring this action. *See Davidson v. Stanl*ey, 2003 WL 21785151 * 7 (D. N.H.) ("state taxpayers have standing to challenge the expenditures of state funds as violative of the Establishment Clause." (citations omitted).

The FF receives almost all of its funding (*i.e.* more than 90%) from the federal, state and local governments to operate a vocational training program for inmates in BCP.  However, in addition to providing job skills, it is alleged that FF's program devotes a significant amount of its program time conducting religious discussions, lectures and prayer with the inmates.  (*Id.*, pp. 1, 11).  The FF does not segregate government funds for secular uses, and thus, it is alleged that it uses governmental funds for its religious activity and instruction.  (*Id.*).  It is also alleged that government funds are used to pay the salaries of FF employees, who are required to satisfy religious testing, and thus Plaintiffs claim that the government is financing religious discrimination in employment.  (*Id.*).  Plaintiffs therefore contend  that the government's financial support of the FF program violates the Establishment Clause  of the First Amendment, as well as the religious freedom provisions of the Pennsylvania Constitution.  (*Id.*, p. 2).  As relief, Plaintiffs seek, in part, an injunction precluding the Defendants from any further funding of the FF's program at BCP as long as the program includes any religious activity, including the alleged indoctrination of inmates in its religious views.  Plaintiffs also seek a declaratory judgment that the Defendants violated the First Amendment of the United States Constitution and the Pennsylvania Constitution, as well as nominal damages.  (*Id.*, pp. 26-29).  Further, Plaintiffs seek disgorgement of all governmental funds FF ever received or to require FF to pay back all governmental  funds it used to support religious activities.  Plaintiffs request attorneys' fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2412.  (*Id.*, p. 30).[4]

---

[4]The District Court has discretion in a § 1983 action to award "the prevailing party ... a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988; *Beam v. Downey*, Appeal No. 04-3424, 3d Cir. October 12, 2005 (Non-Precedential).

Plaintiffs allege that Bradford County has delegated to FF the performance of a traditionally public function, namely the rehabilitation and supervision of inmates, and thus FF is a state actor for purposes of § 1983. (*Id*., p. 8).   Alternatively, it is alleged that FF is an indispensable party under  Fed.R.Civ.P. 19. (*Id*.).

Plaintiffs aver that Bradford County directly provided funding to FF and that the PCCD Director gave Bradford County the funds, which in turn were provided to FF.  Defendant Gonzales is named as a Defendant since the funds which FF received from the County were provided to Pennsylvania from a federal grant distributed by the Department of Justice. (*Id*., pp. 5-7).  The FF is a "faith based, non-profit organization" which has a contract with Bradford County to operate its program at BCP. (*Id*.).  The FF is a prison ministry that provides vocational training to inmates at BCP, and inmates in the program work on construction sites throughout the County, including a church.  While outside of the Prison at construction project sites, the FF has full control over and supervision of the inmates in the program.  It is alleged that a large amount of the inmates' time in the FF program is devoted to Christian religious discussions, lectures and prayer, and that inmates are given Bibles and other religious literature. (*Id*., pp. 12-13).  Plaintiffs aver that the FF uses the government money which it receives, including their tax money, to fund the religious activities they provide inmates at BCP.  Plaintiffs claim that Defendants have not established safeguards, and do not monitor FF's spending,  to prevent  the FF from using government money to pay for its religious activities. (*Id*., p. 16-17).

Plaintiffs allege that the direct payment of government funds by Bradford County to FF, a religious organization, violates the Establishment Clause of the United States Constitution and the

4

Pennsylvania Constitution. (*Id*.). Plaintiffs assert a violation of their civil rights under 42 U.S.C. § 1983, Count One, and a violation of Section 3, Article I of the Pennsylvania Constitution, Count Two. (*Id*., pp. 21-25). Specifically, Plaintiffs claim that the County and the FF have acted in concert for the purpose of "maintaining the unconstitutional use of public funds to support religion and religious discrimination, in violation of 42 U.S.C. § 1983." (*Id*., p. 24). In Count III, Plaintiffs allege a violation of Section 29, Article III of the Pennsylvania Constitution. (*Id*., pp. 25-26).

In its Motion to Dismiss, FF argues that Plaintiffs have failed to sufficiently allege that it is a state actor or that it acted under color of state law as required under § 1983. FF argues that the Court should not exercise supplemental jurisdiction over Plaintiffs' claims under the Pennsylvania Constitution since the law regarding a right of action to damages under the Pennsylvania Constitution is unsettled. FF contends that Plaintiffs' claim for damages under the First Amendment should be dismissed since the Establishment Clause does not protect individual liberty rights. Finally, FF argues that Plaintiff Thurston's claims for prospective equitable relief are moot since he is no longer an inmate at BCP and no longer participates in FF's program.

## III. Discussion.

### A. *Section 1983 Claim.*

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of

5

substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*.  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

## B. First Amendment Claim.

In this case, Plaintiffs have named Defendant FF, a private non-profit organization, with respect to its program at BCP in which it is alleged that a "significant portion of inmates' time ... is not spent on the learning of job skills, but on religious discussions, religious lectures, and prayer." (Doc. 1, p. 1).  Defendant FF argues that Plaintiffs have not properly alleged that it acted under color of state law, and hence, Plaintiffs have failed to state a cognizable § 1983 claim against it. Defendant FF contends that the Establishment Clause, which applies to states by virtue of the

Fourteenth Amendment, only limits state action and governmental activity, and Plaintiffs cannot rely upon it to support their § 1983 claim against it, a private actor.  (Doc. 74, pp. 2-3).  As the Court in *Nusbaum v. Terrangi*, 210 F. Supp. 2d 784, 787 (E.D. VA 2002), stated "[t]he Establishment Clause provides that 'Congress shall make no law respecting an establishment of religion ....'  U.S. Const. Amend. I.  It applies to state governments through the Fourteenth Amendment." citing *Board of Educ. v. Grument*, 512 U.S. 687, 690 (1994).

According to Plaintiffs' pleading, Defendant FF receives most of its funding from the government to operate its vocational training program for inmates in BCP, which is the sole program at the prison providing vocational training to the inmates.  FF is a prison ministry with its mission, as described by Plaintiffs (*Id.*, p. 12), as converting inmates to Christianity.  A contract exists between Bradford County and FF to operate its program at BCP.  It is also alleged that FF discriminates by only employing Christians.  Plaintiffs allege that the County has delegated to FF its authority over the supervision and rehabilitation of inmates in FF's program when they are working outside of the prison. (*Id.*, pp. 22-23).  Plaintiffs also claim that despite being aware that FF is providing religious instruction and activity to inmates, the County and FF have conspired to continue the unconstitutional use of government funds to promote religion and religious discrimination. (*Id.*, pp. 23-24).  As stated, Defendant FF has moved to dismiss the Complaint as against it pursuant to Fed. R. Civ. P. 12 (b) (6).[5]

---

[5]Defendant Gonzales has taken no position on the legal issues raised by Defendant FF in its Motion.  Doc. 57.

In order for the Plaintiffs to state a 42 U.S.C. §1983 claim, as mentioned, Plaintiffs must first show that the Defendant acted under color of state law.  Action under color of state law requires "that the defendant in a §1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 48 (1988).  The issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself.  *Gorman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

"Supreme Court jurisprudence outlines several approaches or discrete tests for detecting the presence of action under color of state law.  The tests have included the exclusive government function approach, the joint participation or symbiotic relationship approach and the nexus approach." *Id*. at 639.  The traditional exclusive governmental function test concerns whether the function performed has been 'traditionally the exclusive prerogative of the State.'" *Klavan v. Crozer-Chester Medical Center*, 60 F. Supp.2d 436, 441, f.n. 5 (E.D. Pa. 1999) *quoting Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982).  "The 'symbiotic relationship' test examines the relationship between the state and the alleged wrongdoer to discern whether there is a great degree of interdependence between the two." *Klavan*, 60 F.Supp.2d at 441.  And, the nexus approach "focuses on the connection between the state and the specific conduct that allegedly violated the plaintiff's civil rights...." *Id*. at 442.  Defendant FF argues that the required close nexus between the State and its program are lacking such that its private action cannot be fairly attributed to the State.  Defendant FF also agues that it does not perform a traditional governmental function.  (Doc. 74, pp. 4-6).

It is not disputed that FF is a private non-profit corporation.  Plaintiffs claim that they have adequately alleged that FF was acting under color of state law, since they have alleged a close nexus between the State and the challenged conduct.  It is alleged that FF receives almost all of its funding from governmental sources, local, state and federal.  It is alleged that the BCP has delegated its authority and supervision over its inmates to FF while they are outside of the prison working on construction projects and that supervision of inmates is the state's traditional public function.[6] Plaintiffs claim that the County was well aware that FF's program indoctrinated the inmate enrollees to Christianity.  Further, Plaintiffs aver that Bradford County and FF conspired to continue to use governmental funds to promote FF's program even though the County was made aware of the strong religious undertones of the program.  Defendant FF asserts that Plaintiffs have only alleged a tenuous connection between it and the County.  However, we agree with Plaintiffs that they have alleged a sufficiently close nexus between the County and FF such that FF was acting under color

---

[6]Both parties agree that providing vocational training programs to inmates alone is not sufficient to render FF's conduct in running its program a state action.  (Doc. 74, p. 4 & Doc. 55, p. 14).  We also agree with FF that the employment of inmates by a private company is also insufficient to render it a state actor.  (Doc. 74, p. 5).  However, as discussed below, here we find that Plaintiffs' claim that the County's delegation of its authority, supervision and control of its inmates to FF while they are working at construction projects outside of the prison is sufficient for purposes of the present Motion to satisfy the state action requirement of their § 1983 claim.  Defendant FF argues that Plaintiffs have not alleged that it had a heightened level of supervision and control over BCP inmates that marks its program as being different from the typical work release program.  (Doc. 74, p. 8).  We disagree (Doc. 1, pp. 22-23) and find that Plaintiffs should be given the opportunity, through discovery, to explore the degree of supervision and control the County delegated to FF over the inmates in FF's program.  If, following discovery, the evidence reveals that this delegation of supervisory control by the County to FF was not complete or unfettered, FF can certainly file an appropriate dispositive motion at that time.

of state law.

In the case of *Benn v. Universal Health Sys., Inc.*, 371 F. 3d 165, 171 ( 3d Cir. 2004), the

Court, citing to *Brentwood v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296 (2001), stated

the following factors to consider when determining if a private entity was a state actor:

> [a] challenged activity may be state action when it results from the
> State's exercise of "coercive power," [*Blum v. Yaretsky*, 457 U.S. 991,
> 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)], when the State provides
> "significant encouragement, either overt or covert," *ibid.*, or when a
> private actor operates as a "willful participant in joint activity with the
> State or its agents," [*Lugar v. Edmondson Oil Co.,*, 457 U.S. 922, 941,
> 102 S.Ct. 2744, 73 L.Ed.2d 482 (1983)] (Internal quotation marks omitted).
> We have treated a nominally private entity as a state actor when it is
> controlled by an "agency of the State," *Pennsylvania v. Board of Directors of
> City Trusts of Philadelphia*, 353 U.S. 230, 231 , 77 S.Ct. 806,
> 1 L.Ed.2d 792 (1957) *(per curiam),* when it has been delegated a
> public function by the State, cf., e.g., [*West v. Atkins*, 487 U.S. 42,
> 56, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)]; *Edmonson v. Leesville
> Concrete Co.*, 500 U.S. 614, 627-628, 111 S.Ct. 2077, 114 L.Ed.2d 660
> (1991), when it is "entwined with governmental policies," or when
> government is "entwined in [its] management or control," *Evans v.
> Newton*, 382 U.S. 296, 299, 301, 86 S.Ct. 486, 15 L.Ed.2d 373
> (1966).

531 U.S. at 295, 121 S.Ct. 924.

The Plaintiffs have sustained their burden as against Defendant FF, as some of the above

factors indicate the presence of state action.  Defendant FF is a private non-profit corporation that

was performing vocational training work at the prison.  We find that Plaintiffs' allegations detailed

above are sufficient to show that FF was acting under color of state authority.[7]   Clearly, the

---

[7]Since we find that Plaintiffs have sufficiently alleged that FF was acting under color of
state law for purposes of the present Motion, we do not address Plaintiffs' claim that FF should
remain as a necessary party.

supervision and control of inmates is a traditional public function reserved to the state. *See Rosborough v. Management & Training Corp.*, 350 F. 3d 459 (5th Cir. 2003) (private company operating a prison acted under color of state law since it was performing a traditional public function).[8] While Defendant points out that there is no claim in our case that it was operating a prison and that job training is a private sector task, Plaintiffs have alleged that when the inmates in FF's program go to work at construction sites outside of the prison, FF is charged with their control and supervision and has authority over them. The Supreme Court's "public function" test directs that "a private entity acts under color of state law 'when that entity performs a function which is traditionally the exclusive province of the state." *Id.* at 460 (citation omitted). As Plaintiffs allege (Doc. 1, pp. 7-8), it is these functions, namely control and supervision of inmates, as well as the rehabilitation of inmates, that makes FF's conduct in our case a traditional public function reserved to the State.[9]

Plaintiffs also have sufficiently claimed that "the State has so far insinuated itself into a position of interdependence with [FF] that it must be recognized as a joint participant in the challenged activity...." *Klavan*, 60 F. Supp.2d at 442. Further, Plaintiffs have alleged that there was a sufficiently close nexus between the State and FF's program so that the action of the latter may

---

[8]The *Benn* Court stated that "[i]n considering the 'public function' issue, we must ask whether the challenged action relates to a function that has been 'traditionally the exclusive prerogative of the state.'" (citation omitted). 371 F.3d at 172.

[9]As noted above, through discovery, the parties can determine the amount of supervision and control which the County allegedly delegated to FF, and the issue as to whether there was sufficient delegation to make FF's program more than a typical work release program can be re-argued by FF in a summary judgment motion.

be fairly treated as that of the State itself.  *Id.*   Since 42 U.S.C. §1983 provides relief for infringement of civil rights by an individual who acts under color of state law, and does not apply to purely private conduct, Plaintiffs have stated and can maintain a Section 1983 action against Defendant FF since they have alleged a sufficiently close nexus between the State and FF's program.

Defendant FF also contends that Plaintiffs vague conspiracy allegations are insufficient.  We have mentioned Plaintiffs' conspiracy claim above.  (Doc. 1, p. 23-24, ¶ 61.).  As the Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88 (1971)*,* indicated, 42 U.S.C. § 1985(3) is limited to private conspiracies. 403 U.S. at 102.  However, as Defendant recognizes, Plaintiffs have not raised a claim under § 1985(3) against it or against any other Defendant.  A claim under § 1895(3) against a Defendant who is not a state actor must be based on a properly pleaded conspiracy with a state actor.   While  we agree with Defendant that  Plaintiffs do not meet this hurdle with respect to a § 1985(3) claim, as stated, they do not assert such a claim.  The Third Circuit in *Jones v. Maher*, Appeal No. 04-3993 (3d Cir. 2005), slip op. p. 5, stated that broad and conclusory allegations in a conspiracy claim are insufficient to state a viable claim under § 1985. (Citation omitted).  Also, this Court in *Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), aff'd. 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993), stated as follows:

> Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.  In *Waller v. Butkovich,* 584 F.Supp. 909, 931 (D.C.N.C. 1984), the district court outlined the pleading requirements in a conspiracy action.
>
> In most cases, a bare conclusory allegation of 'conspiracy' or 'concerted action' will not suffice.  The plaintiffs must

expressly allege an agreement or make averments of
'communication, consultation, cooperation, or command'
from which such an agreement can be inferred . . .
(Citation omitted.) . . .  Allegations that the defendants'
actions combined to injure the plaintiffs are not a
sufficient basis from which to imply a conspiracy . . .
(Citation omitted.)
Additionally, the plaintiffs must make 'specific factual
allegations connecting the defendant to the injury' . . .
(Citations omitted.) . . .  On the other hand, an overt
act need not be pleaded against each defendant, because
a single overt act by just one of the conspirators is
enough to sustain a conspiracy claim even on the merits . . .
(Citation omitted.) . . .  Nor are the plaintiffs required to
allege exactly how the agreement was made -- i.e. they
need not allege exactly where and when, and with what
words, the agreement was formed . . . (Citations omitted.)
. . .  conspiracies are by their very nature secretive, and
the victims thereof are unlikely to have access to such
facts before bringing suit . . . (Citation omitted).

Notwithstanding Plaintiffs' failure  to state a conspiracy claim against  Defendant FF under

§ 1985(3), in that they do not allege such a claim with the requisite specificity, they nonetheless

sufficiently allege an agreement between FF and the state actor Defendant to unlawfully coerce

inmates to participate in religious activities if they enroll in FF's vocational training program and use

government funds to do so in violation of § 1983.  Further, this is only just one of the claimed

connections between the County and FF which Plaintiffs allege to support their contention that FF

was acting under color of state law.  The other connections have been detailed above.

Thus, we find that Plaintiffs have sufficiently pled that Defendant FF was acting under color

of state law for § 1983 purposes.

### C. Claims Under the Pennsylvania Constitution

Defendant FF argues that Plaintiffs have no private right of action to enforce any rights under the state constitution. (Doc. 34, pp. 10-12). As stated, Plaintiffs base their second and third claims under the Pennsylvania Constitution. The Defendant argues that these claims are barred since there is no private right of action under the Pennsylvania Constitution. The Plaintiffs in their Brief argue that they have relied upon self-executing provisions of the Pennsylvania Constitution, such as its prohibition on the state's establishment of a religion. As discussed above, we find that the Plaintiffs have stated a § 1983 claim against Defendant FF. The remaining issues raised by the Defendant are whether the Plaintiffs have stated any claims under the Pennsylvania Constitution. The Defendant contends that Plaintiffs' pendent state law claims (Count Two and Three) should be dismissed. (*Id.* at p. 12).

While the Plaintiffs have addressed the Defendant's argument that their claims under the Pennsylvania Constitution should be dismissed, we agree with Defendant and find that the issue as to whether there is a private cause of action for damages under the Pennsylvania Constitution is not settled. Thus, we agree with the Defendant that the Plaintiffs' claims under the Pennsylvania Constitution should be dismissed. Recently, this Court in *Martin v. Red Lion Police Dept.*, Civil No. 00-1622, p. 16 (J., McClure, October 26, 2004) stated that "[t]he court is unable to locate any Pennsylvania Supreme Court case law that would provide the plaintiff a private right to recover money damages under Article I Section 8 of the Pennsylvania Constitution."

Also, the Defendant relies upon several federal court cases, including cases in our Circuit, which have held that there is no private cause of action for damages under the Pennsylvania

Constitution.  (Doc. 34, pp. 11-12).  We agree with these cases to the extent that this is an unsettled

issue of state law and as such, the Pennsylvania courts should decide this novel issue.  *See also*

*Devane v. Com. of PA. ,* Civil No. 04-1018, M.D. Pa. (J. Caputo), Memorandum and Order dated

December 16, 2004.

In *Mulgrew v. Fumo,* 2004 WL 1699368 *3 (E.D. Pa.), the Court stated as follows:

> . . . the issue of whether a direct right of action exists
> under Article I of the Pennsylvania Constitution is unclear
> under Pennsylvania case law.  *See e.g., Curran v. Southeastern*
> *Pennsylvania Trans. Authority,* No. 01-2593, 1999 U.S. Dist.
> LEXIS 521, at *4 (E.D. Pa. Jan. 21, 1999) (finding that whether
> a private cause of action exists under Article I, Section 7
> of the Pennsylvania Constitution is a difficult and unsettled
> issue of state law); *see also Graham v. City of Philadelphia*,
> No. 01-2593, 2002 U.S. Dist. LEXIS 13201 (E.D. Pa. July 17,
> 2002) (same).
>
> . . . . . . .
>
> Due to this unsettled issue of law, as to whether such a
> direct right of action exists, we believe a state court is
> better equipped to determine the causes of action that
> may be derived from the Pennsylvania Constitution.
> *See Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts,*
> *Inc.,* 140 F.3d 478, 487 (3d Cir. 1998) (explaining that the
> interpretation of a state constitution is best performed by
> the state court).  We therefore decline to exercise supplemental
> jurisdiction over the state constitutional claims remaining in the
> Second Cause of Action of Plaintiff's Complaint because they
> present novel issues of state law.  *See* 28 U.S.C. § 1367(c)(1).

As Defendants recognize (Doc. 34, pp. 11-12), several courts have found that there is no

basis for implying a private cause of action for damages against defendant state officials under the

Pennsylvania Constitution.  *See Chantilly Farms, Inc., v. West Pikeland Township*, No. 00-3903,

2001 U.S. Dist. LEXIS 3328 (E.D. Pa. Mar. 23, 2001); *Mulgrew v. Fumo*, 2004 WL 1699368 (E.D.

Pa., July 29, 2004) (NO. CIV. A. 03-CV-5039); *Curran v. Southeastern Pennsylvania Trans. Authority*, No. 01-2593, 1999 U.S. Dist. LEXIS 521 at *4 (E.D. Pa. Jan. 21, 1999); *Kornafel v. U.S. Postal Service*, 2000 WL 116072 (E.D. Pa., Jan. 31, 2000) (NO. CIV. A. 99-6416); *Kelleher v. City of Reading*, 2001 WL 1132401 (E.D. Pa., Sep. 24, 2001); *Dooley v. City of Philadelphia*, 153 F.Supp. 2d 628, 663 (E.D. Pa. 2001); *Sabatini v. Reinstein*, Civil Action No. 99-2393, 1999 U.S. Dist. LEXIS 12820, at *6 (E.D. Pa. Aug. 18, 1999); *Holder v. City of Allentown,* 1994 U.S. Dist. LEXIS 7220 at * 11 (E.D. Pa. May 19, 1994).

Therefore, as in *Mulgrew*, we shall recommend that this Court decline to exercise supplemental jurisdiction over the Plaintiffs' Pennsylvania Constitutional claims, Claims 2 and 3, since they present novel issues of state law.  *See Mulgrew; see also* 28 U.S.C. § 1367(c)(1).  The Defendant's Motion to Dismiss the stated claims (Counts Two and Three, Doc. 1, pp. 24-26) should be granted.

### D.  Claim for Damages for Violation of Establishment Clause

As stated above, Plaintiffs seek nominal damages for the alleged violation of their rights under the Establishment Clause.  (Doc. 1, pp. 28-29).[10]  Defendant FF argues that Plaintiffs lack standing to receive nominal damages since, as taxpayers, they have not suffered an injury as a result of the expenditure of public funds in a manner which allegedly violated the Establishment Clause, *i.e.* using governmental money it received for its religious activities that were part of its program.

---

[10]Since we are recommending that Plaintiffs' claims under the Pennsylvania Constitution be dismissed, we also recommend that their corresponding request for relief for nominal damages for such claims be dismissed.  Doc. 1, p. 28.

Defendant states that the misuse of public money is a generalized injury and not an injury that was personal and individual to our Plaintiffs so as to confer standing upon them to be awarded damages.

As the *Davidson* Court stated, "[i]n order to establish state taxpayer standing, plaintiffs must show that the challenged activity involves 'a measurable appropriation' or loss of revenue, and 'a direct dollars-and-cents injury' to themselves." 2003 WL 21785151 at *7 (citations omitted). Plaintiffs' Complaint alleges that BCP's relationship with Defendant FF involves a significant amount of appropriation and that their tax dollars have supported FF"s program. (Doc. 1, pp. 11, 16).

In *Lee v. Weisman*, 505 U.S. 577, 587 (1992), the Supreme Court, in considering the minimum requirements of the Establishment Clause, stated: "It is beyond dispute that, at minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984) (court found that a high school commencement ceremony which included a prayer violated the Establishment Clause since students were psychologically coerced to attend the ceremony). It is clear that a Plaintiff, who wins only nominal damages in his § 1983 action, is still entitled to attorneys' fees as a prevailing party under the Civil Rights Attorney Fees Award Act, 42 U.S.C. § 1988(b). *See Farrar v. Hobby*, 506 U.S. 103, 112 (1987).[11]

In our case, it is alleged that FF had the only vocational training program available to inmates at BCP. If an inmate wanted to receive vocational training, he thus had to enroll in FF's program.

---

[11] There is no dispute that Plaintiffs (except for Plaintiff Thurston) are entitled to injunctive relief if they prevail on their § 1983 claim.

This certainly amounts to a degree of coercion exerted on the inmate to sign up for the program if he wanted to rehabilitate himself and receive job skills and training.  It is also alleged that FF's program coerced, either directly or psychologically, enrolled  inmates to participate in its religious activities and exercises, and that the primary purpose of the program was to advance Christian religious beliefs.  *See Nusbaum*, 210 F. Supp. 2d 788 ("When prison officials coerce an inmate to attend a program teaching religion, the prison officials are certainly endorsing religion over non-religion and are not remaining neutral on matters of religion.").  In our case, as stated, while no direct coercion to participate in FF's program is alleged against BCP officials, we have found that Plaintiffs alleged a degree of psychologically coercion.  While inmates do not mandatorily have to participate in FF's program (unlike in the *Nusbaum* case), if they chose to learn a vocational skill, they must enroll in the program which allegedly espouses religion.[12]

As in *Lynch,* where the Court found psychological coercion in students to attend their high school commencement exercises although it was not mandatory, we too find, at this point of the case, such coercion has been alleged.  It is alleged that inmates at BCP had no choice but to enroll in FF's program if they wanted vocational training and to learn job skills.   Until discovery is complete, it is not clear at this stage of the proceeding as to the degree of psychologically coercion which is present in our case.[13]  Nor is it clear if an inmate who participated in the FF's program was

_____

[12]We recognize that convicted prisoners generally have no constitutional right to prison vocational training programs.  *See Coffey v. Ingram*, WL 82855, *1 (E.D. Pa. 1988); *Greist v. Norristown State Hosp.*, 1997 WL 661097 (E.D. Pa.).

[13]Indeed, the Complaint alleges that Plaintiff Thurston, while an inmate at BCP, entered FF's program and that the "Program personnel proselytized him in their religious beliefs without his consent, and they pressured him to engage in prayer."  Further, it is alleged that Thurston "felt coerced by jail officials and Firm Foundation staff into submitting to religious proselytization

considered more rehabilitated than an inmate who did not, thus bettering his chances for an earlier parole than the inmate who did not participate.[14]

We agree with Plaintiffs that courts have held that nominal damages may be awarded in a case asserting a violation of the Establishment Clause. (Doc. 55, pp. 23-24). *See Ward v. Santa Fe Indep. Sch. Dist.*, 393 F. 3d 599, 602 (5th Cir. 2004); *Allah v. Al-Hafeez*, 226 F. 3d 247, 251-252 (3d Cir. 2000) (PLRA, 42 U.S.C. § 1997e(e), does not preclude a claim for nominal damages to redress violations of constitutional rights); *Mitchell v. Horn*, 318 F. 3d 523 (3d Cir. 2003); *Pryer v. C.O. 3 Slavic*, 251 F. 3d 448 (3d Cir. 2001) (nominal damages may be awarded when a constitutional violation does not cause actual injury). Thus, we shall recommend that Defendant FF's motion to dismiss Plaintiffs' claim for nominal damages be denied.[15]

---

and attending prayer sessions." (Doc. 1, p. 5).

[14]We note again that it is alleged that there was not an alternative vocational training program available for BCP inmates that was void of any religious content.

[15]As discussed below, we also find that Plaintiff Thurston's claim for nominal damages survives, despite finding that his claims for injunctive and declaratory relief are moot.

### E. Mootness of Plaintiff Thurston's Claims for Declaratory and Injunctive Relief

Defendant FF argues that, since the Complaint states that Plaintiff Thurston was formerly an inmate at BCP and that he formerly participated in the FF program while at the prison (Doc. 1, p. 4), his claims for injunctive relief are moot. (Doc. 34, p. 19).[16]  While Defendant is correct that an inmate lacks standing to seek injunctive relief once he is no longer subject to the alleged unconstitutional conduct he is challenging and that the claim for relief becomes moot, Plaintiffs are also correct that there is an exception to the mootness rule if the conduct is capable of repetition. (Doc. 55, pp. 31-32).  *See Davidson, supra* at * 5.  Here, Plaintiffs have submitted the Declaration of Thurston in which he avers that after his release from BCP, he was arrested again a new drug charges and on or about May 14, 2005 he was again incarcerated in BCP.  Thurston admits that he was released from confinement at BCP on May 25, 2005 and is not presently an inmate there, but he avers that if he is convicted of the pending drug charges filed against him, he will likely be re-incarcerated at BCP.  (Doc. 56).[17]

In the Third Circuit case of *Chong v. INS*, 264 F. 3d 378 (3d Cir. 2001), the Court dealt with the issue as to whether an alien's § 2241 habeas petition was moot when she was no longer in INS custody and deported from the United States.  The Court found sufficient collateral consequences flowed from the alien's appeal of the BIA's order of removal, since the removal order prevented the

---

[16]As noted above, it is not alleged that Plaintiff Thurston is also a taxpayer of Bradford County, and thus, the question of whether he has standing as a taxpayer is not at issue.

[17]We shall consider Thurston's Declaration despite being outside of the pleadings for purposes of the present Motion to Dismiss since we agree with Plaintiffs (Doc. 55, p. 32, n. 15) that Defendant's argument regarding the mootness of Thurston's claims for relief relate to the Court's subject matter jurisdiction thus arising under Rule 12(b)(1).

alien as an aggravated felon from reentering the United States for ten (10) years.  *Id*. at 384-86.

In *Chong*, the court also discussed the four (4) exceptions to the mootness doctrine, which allow

judicial review.  These exceptions are:

> (1) secondary or "collateral" injuries survive after resolution of the primary
> injury; (2) the issue is deemed a wrong capable of repetition yet evading
> review; (3) the defendant voluntarily ceases an allegedly illegal practice but
> is free to resume it at any time; or (4) it is a properly certified class action suit.

*Id*. at 384. (citation omitted).

In *Spencer v. Kemna*, 523 U.S. 1 (1998), the Supreme Court found that a habeas petitioner's

release in and of itself did not render moot his habeas petition.  Rather, the Court stated that "[t]he

more substantial question ... is whether petitioner's subsequent release caused the petition to be

moot because it no longer presented a case or controversy under Article III, § 2, of the

Constitution."  *Id*. at 7.  In order to have an action dismissed based on mootness, the Defendant

must show that "there is no reasonable expectation that the wrong will be repeated." *Northeastern*

*Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993).

The question arises now as to whether Plaintiff Thurston's claims for declaratory and

injunctive relief are moot since he can no longer be subject to the alleged religious coercion and

religious indoctrination he is seeking to enjoin FF from using in its vocational program at BCP.  In

*Spencer*, the Court stated that "[t]he parties must continue to have a personal stake in the outcome

of the lawsuit.  This means that, throughout the litigation, the Plaintiff must have suffered, or be

threatened with, an actual injury traceable to the Defendant and likely to be redressed by a

favorable judicial decision." *Id*.  (Citations omitted).

We agree with Defendant that, even if Thurston is convicted of the new drug charges filed against him, receives a prison sentence and is committed to BCP, his alleged injury in this case, *i.e.* being coerced to engage in prayer and religious activities as an enrollee in FF's program, are entirely too speculative.  As Defendant states (Doc. 74, p. 18), Thurston does not aver in his Declaration that even if he is re-incarcerated at BCP, he will be once again exposed to FF's program.  To make such an averment, he would have to once again enroll in the program if he is convicted of the new charges and is in fact incarcerated at BCP.  There would only be an actual controversy with respect to Thurston's claims if he is in fact re-incarcerated at BCP and he does in fact re-enroll in FF's program.  The possibility that Thurston may someday be re-imprisoned at BCP is not enough to revive his moot claim and show that he faces exposure once again to FF's program.  Stated simply, there is no reasonable expectation that Plaintiff Thurston would be subjected to the same action again, even if he is re-incarcerated at BCP.  Thus, we find that Plaintiff Thurston, even if his is re-confined as BCP, would not be subjected to the same religious  coercion that he alleges to have experienced as an enrollee in FF's program, since there is no reasonable likelihood that he would re-enroll in the program.  We find that an Article III, § 2 case or controversy does not continue to exist regarding Plaintiff Thurston's injunctive and declaratory relief claims against Defendant FF since the Plaintiff does not claim to have suffered or to be threatened with an actual injury traceable to this Defendant that is likely to be redressed by a favorable judicial decision.  *See Spencer*, 523 U.S. at 7.  As the Third Circuit has stated, "[s]uch conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power." *Abdul-Akbar v. Watson,* 4 F. 3d 195, 207 (3d Cir. 1993). Therefore, the capable of repetition yet evading review

narrow exception to the mootness doctrine is not applicable in this case. *See Spencer*, 523 U.S. at 17(citations omitted); *see also U.S. v. Kissinger*, 309 F. 3d 179, 183 (3d Cir. 2002).

Therefore, we shall recommend that Defendant's Motion to Dismiss as moot Plaintiff Thurston's claims for declaratory and injunctive relief be granted.

Further, we concur with Defendant that Plaintiff Thurtson's request for nominal damages is merely incidental to the injunctive and declaratory relief he seeks and, as such, we find that his claim for nominal damages does not prevent the mootness of his claims for declaratory and injunctive relief. (Doc. 74, p. 20). The claims of all of the Plaintiffs clearly seek to have this Court declare that governmental funding of FF's program violates the Establishment Clause and to have this Court enjoin any further funding of the program by government entities. However, Plaintiff Thurston's claim for nominal damages still remains. *See Sutton v. Raheed*, 323 F. 3d 236, 249 (3d Cir. 2003); *Doe v. Delie*, 257 F. 3d 309, 314 (3d Cir. 2001) ("where a Plaintiff has requested several forms of relief and some of the requests become moot, the court must still consider the viability of the remaining requests.") *citing Jersey Cent. Power & Light Co. v. N.J.*, 772 F. 2d 35, 40 (3d Cir. 1985) ("The availability of damages or other monetary relief almost always avoids mootness."). Here, while we have found Plaintiff Thurston's declaratory and injunctive relief claims to be moot, since he can no longer present a justiciable claim for such relief, we have determined that the Plaintiffs' claim for nominal damages is still cognizable.

**IV.  Recommendation.**

Based on the foregoing, it is respectfully recommended that the FF Defendant's Motion to Dismiss **(Doc. 23)** be granted in part and be denied in part.  It is recommended that Defendant's Motion be granted with respect to the dismissal of Plaintiffs' claims under the Pennsylvania Constitution (Counts Two and Three).  It is also recommended that Defendant's Motion to Dismiss as moot Plaintiff Thurston's claims for declaratory judgment and injunctive relief be granted.   It is recommended that Defendant's Motion to Dismiss Plaintiffs' (including Plaintiff Thurston) claim for nominal damages be denied.  Further, it is recommended that Defendant's Motion be denied with respect to Plaintiffs' § 1983 claim (Count One).  It is also recommended that this case be remanded to  the undersigned for further proceedings, including the direction of Defendant FF to file an Answer to the Complaint,  for scheduling of a Joint Case Management Conference (after Defendant Gonzales' Summary Judgment Motion is disposed of) and for discovery.


                              s/ Thomas M. Blewitt
                              **THOMAS M. BLEWITT**
                              **United States Magistrate Judge**

**Dated: October 20, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLARK MOELLER and                  :
JANE MOELLER, et al.,              :
                                   :        CIVIL ACTION NO. **3:CV-05-0334**
                                   :
            Plaintiffs             :        (Judge Munley)
                                   :
            v.                     :        (Magistrate Judge Blewitt)
                                   :
BRADFORD COUNTY, et al.,           :
                                   :
                                   :
            Defendants             :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **October 20, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

25

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                **s/ Thomas M. Blewitt**
                **THOMAS M. BLEWITT**
                **United States Magistrate Judge**


**Dated: October 20, 2005**