IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLARK MOELLER and                      :
JANE MOELLER, et al.,                  :
                                       :    CIVIL ACTION NO. **3:CV-05-0334**
                                       :
            Plaintiffs                 :    (Judge Munley)
                                       :
            v.                         :    (Magistrate Judge Blewitt)
                                       :
BRADFORD COUNTY, et al.,               :
                                       :
                                       :
            Defendants                 :

## REPORT AND RECOMMENDATION

The Plaintiffs, Clark and Jane Moeller, Jeffery Gonzalez, Laura Blain, Chris Schwenke and Tim Thurston, all residents of Bradford County, Pennsylvania, filed this action, through counsel for Americans United for Separation of Church and State, and Pennsylvania American Civil Liberties Union, on February 17, 2005, seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201 *et seq*. (Doc. 1). The named Defendants are Bradford County; Carl J. Anderson, (former) Executor Director of Pennsylvania Commission on Crime and Delinquency ("PCCD"); Alberto Gonzales, United States Attorney General; and The Firm Foundation of America, d/b/a/ The Firm Foundation of Bradford County ("FF"). Presently ripe for disposition is the Motion to Dismiss or for Summary Judgment of Defendant Gonzales.[1] **(Doc. 24)**.[2]

---

[1]By separate Report and Recommendation, we considered the Motion to Dismiss of Defendant FF, Doc. 23. (Doc. 89).

[2]Remaining Defendants Bradford County and the Current Acting Director of PCCD (formerly Defendant Anderson) filed their Answers to Plaintiffs' Complaint (Docs. 19 & 22,

**I. Motion to Dismiss Standard.**

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

"For purpose of determining standing, we must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino v. Bor. of Point Pleasant Beach*, 322 F. 3d 293, 296 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

---

respectively). We concurred with PCCD that its current Acting Director, Carol L. Lavery, should be automatically substituted pursuant to Fed. R. Civ. P. 25(d)(1) in place of Defendant Anderson, as he no longer holds the Director position. (Doc. 22, p. 2, n. 1). We have directed the Clerk of Court to substitute Lavery as a Defendant in place of Anderson. (Doc. 88).

**II. Allegations of Complaint**.

The Moeller Plaintiffs, Plaintiff Gonzalez, Plaintiff Blain and Plaintiff Schwenke are residents of Bradford County and taxpayers.  These Plaintiffs object to and are offended by the use of their tax money to finance the FF program at the Bradford County Prison ("BCP") and its "promulgation of its religious beliefs."  (Doc. 1, p. 3).  Plaintiff Thurston is a resident of the County and a former inmate of BCP.  During his incarceration, Plaintiff Thurston participated in the FF program in order to obtain vocational training.  It is not alleged that Plaintiff Thurston was also a taxpayer.  (*Id*., p. 4).[3]

The FF receives almost all of its funding (*i.e.* more than 90%) from the federal, state and local governments to operate a vocational training program for inmates in BCP.  However, in addition to providing job skills, it is alleged that FF's program devotes a significant amount of its program time conducting religious discussions, lectures and prayer with the inmates.  (*Id*., pp. 1, 11).  The FF does not segregate government funds for secular uses, and thus, it is alleged that it uses governmental funds for its religious activity and instruction.  (*Id*.).  It is also alleged that government funds are used to pay the salaries of FF employees, who are required to satisfy religious testing, and thus Plaintiffs claim that the government is financing religious discrimination in employment.  (*Id*.).  Plaintiffs therefore contend  that the government's financial support of the FF program violates the Establishment Clause of the First Amendment, as well as the religious freedom provisions of the

---

[3]As taxpayers, Plaintiffs Moellers, Gonzalez, Blain and Shwenke have standing to bring this action.  *See Davidson v. Stanley*, 2003 WL 21785151 * 7 (D. N.H.) ("state taxpayers have standing to challenge the expenditures of state funds as violative of the Establishment Clause." (citations omitted); *Freedom from Religion Foundation, Inc. v. McCallum*, 179 F.Supp.2d 950, 965 (W.D. Wis. 2002) (court found standing on behalf of state and federal taxpayers who opposed use of government funds to promote religion by Faith Works program that received state funding to provide drug treatment and employment training to inmates).

Pennsylvania Constitution.   (*Id.*, p. 2).[4]  As relief, Plaintiffs seek, in part, an injunction precluding the Defendants from any further funding of the FF's program at BCP as long as the program includes any religious activity, including the alleged indoctrination of inmates in its religious views.  Plaintiffs also seek a declaratory judgment that the Defendants violated the First Amendment of the United States Constitution and the Pennsylvania Constitution, as well as nominal damages.  (*Id.*, pp. 26-29). Further, Plaintiffs seek disgorgement of all governmental funds FF ever received or to require FF to pay back all governmental  funds it used to support religious activities.  Plaintiffs request attorneys' fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2412.  (*Id.*, p. 30).[5]

Plaintiffs aver that Bradford County directly provided funding to FF and that the PCCD Director gave Bradford County the funds, which in turn were provided to FF.  Defendant Gonzales is named as a Defendant since the funds which FF received from the County were provided to Pennsylvania from a federal grant distributed by the Department of Justice ("DOJ").  (*Id.*, pp. 5-7). The FF is a "faith based, non-profit organization" which has a contract with Bradford County to operate its program at BCP.  (*Id.*).  The FF is a prison ministry that provides vocational training to inmates at BCP, and inmates in the program work on construction sites throughout the County, including a church.  While outside of the Prison at construction project sites, the FF has full control over and supervision of the inmates in the program.  It is alleged that a large amount of the inmates'

---

[4]In our previous Report and Recommendation, we recommended that Plaintiffs' claims (Counts Two and Three) under the Pennsylvania Constitution be dismissed. (Doc. 89).

[5]The District Court has discretion in a § 1983 action to award "the prevailing party ... a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988; *Beam v. Downey*, Appeal No. 04-3424, 3d Cir. October 12, 2005 (Non-Precedential).

time in the FF program is devoted to Christian religious discussions, lectures and prayer, and that inmates are given Bibles and other religious literature. (*Id.*, pp. 12-13). Plaintiffs aver that FF uses the government money which it receives, including their tax money, to fund the religious activities they provide inmates at BCP. Plaintiffs claim that Defendants have not established safeguards, and do not monitor FF's spending, to prevent FF from using government money to pay for its religious activities. (*Id.*, p. 16-17).

Plaintiffs allege that the direct payment of government funds by Bradford County to FF, a religious organization, violates the Establishment Clause of the United States Constitution and the Pennsylvania Constitution. (*Id.*). Plaintiffs assert a violation of their civil rights under 42 U.S.C. § 1983, Count One, and a violation of Section 3, Article I of the Pennsylvania Constitution, Count Two. (*Id.*, pp. 21-25). Specifically, Plaintiffs claim that the County and the FF have acted in concert for the purpose of "maintaining the unconstitutional use of public funds to support religion and religious discrimination, in violation of 42 U.S.C. § 1983." (*Id.*, p. 24). In Count Three, Plaintiffs allege a violation of Section 29, Article III of the Pennsylvania Constitution. (*Id.*, pp. 25-26).

In his Motion to Dismiss, Defendant Gonzales argues that the Court lacks jurisdiction as to the claims against him since Plaintiffs do not possess standing or, in the alternative, that there are no issues of material fact as to the claims against him and that he is entitled to judgment as a matter of law. (Doc. 24, pp. 1-2). We will begin with the standing issue since "[i]f Plaintiffs do not possess Article III standing, ... this Court lack[s] subject matter jurisdiction to address the merits of Plaintiffs' case." *Storino*, 322 F. 3d at 296 (citations omitted). As discussed below, we find that the Court lacks subject matter jurisdiction as to the funding claim against Defendant Gonzales based on

5

Plaintiffs' lack of standing.  We shall address the alternative motion of Defendant regarding the remaining claims of Plaintiffs, *i.e.* monitoring claim and Establishment Clause claim.

### III.  Statements of Material Fact.

Since the lengthy material facts have been detailed in the filings of the parties and since we find Plaintiffs lack standing as to their funding claim against Defendant Gonzales, we shall not reiterate them herein.  (Docs. 37, pp. 4-8, 36, pp. 2-19, 58, pp. 1-32).  Further, Plaintiffs' response to Defendant's Statement of Material Facts provides the position of the parties, paragraph by paragraph, as well as support citations, with respect to each material factual statement.  (Doc. 58).

### IV.  Discussion.

#### A.  Section 1983 Claim

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981);  *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).  Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also settled in the Third Circuit that personal involvement of defendants in alleged

6

constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*.  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

### B.  First Amendment Claim

As the Court in *Nusbaum v. Terrangi*, 210 F. Supp. 2d 784, 787 (E.D. VA 2002), stated "[t]he Establishment Clause provides that 'Congress shall make no law respecting an establishment of religion ....'  U.S. Const. Amend. I.  It applies to state governments through the Fourteenth Amendment." citing  *Board of Educ. v. Grument*, 512 U.S. 687, 690 (1994).

In this case, Plaintiffs have named Defendant Gonzales, United States Attorney General, with respect to the DOJ's approval of the granting of federal money to Pennsylvania, some of which federal money was, in turn, paid to FF.  Plaintiffs claim that in FF's  program at BCP, a "significant portion of inmates' time ... is not spent on the learning of job skills, but on religious discussions, religious lectures, and prayer."  (Doc. 1, p. 1 & p. 6,  ¶ 16.).  Plaintiffs request a declaratory judgment that Defendant Gonzales violated the Constitution by providing government funds to FF and by failing to adequately monitor FF's spending of those funds.  (*Id.*, p. 27).  Plaintiffs also seek an injunction that would prohibit Defendant from providing any funds to FF and to monitor all

grants in which funds are given to any and all faith-based organizations (not solely FF).   (*Id*.).

Plaintiffs aver that Defendant Gonzales has authority to cause the County to cease providing federal

funds to FF but that he has failed to do so.   (*Id*., p. 7).   Plaintiffs further aver that Defendant

Gonzales, along with the other Defendants, has failed to establish proper safeguards to prevent FF

from using government funds for religious activities. (*Id*., p. 17).   Plaintiffs state that DOJ does "not

audit or monitor the [FF] program to determine whether government money is being used for

religious activities... ."   (*Id*., ¶ 44.).

Plaintiffs argue that Defendant Gonzales does not dispute that federal funds are being used

by FF to conduct its religious activities and promote Christianity (*i.e.* funding claim) and that there

has been inadequate monitoring of FF's expenditure of those funds (*i.e.* monitoring claim).

Plaintiffs state that these two facts alone establish a violation of the Establishment Clause by

Defendant Gonzales.  (Doc. 59, p. 1).  Defendant argues that Plaintiffs do not have standing to sue

him with respect to their funding claim since DOJ had no role in awarding funds to FF and that

under the Byrne program, there is not sufficient personal involvement of the United States Attorney

General with respect to a state's award of grant funds to a local government and to the local

government's contract with a private entity.  Defendant Gonzales maintains that Plaintiffs do not

have standing with respect to their request for prospective injunctive relief as to all DOJ grants

awarded in which some of the money may go to faith-based organizations.   Finally, Defendant

Gonzales contends that even if Plaintiffs can proceed on their monitoring claim with respect to the

grant FF was awarded funds to operate, this claim is without merit since the Byrne grant program

serves a secular purpose, DOJ awards funds on a neutral basis, and DOJ has established sufficient

8

safeguards to prevent the use of federal funds for impermissible purposes.  (Doc. 37, pp. 11 and 21).

### C. Plaintiffs' Standing as to their Funding Claim against Defendant Gonzales

As Defendant states, standing is a legal issue going to the court's subject matter jurisdiction. *Storino*, 322 F. 3d at 296.  Thus, this issue is proper for a motion to dismiss, despite the fact that no discovery has occurred yet in our case.  *See Page v. Schweiker*, 786 F. 2d 150, 153 (3d Cir. 1986).[6]  Defendant Gonzales has moved to dismiss the funding claim based on lack of jurisdiction, contending that Plaintiffs lack standing as to him since their alleged injury is not fairly traceable to any action by him.   Under Fed.R.Civ.P. 12(b)(1), as mentioned above, when deciding a motion to dismiss for lack of standing,  the court must accept "all well-pled factual allegations as true and draw[s] all reasonable inferences in favor of the Plaintiff."  *Winkler v. Chicago Sch. Reform Bd. Of Trustees*, 2000 WL 44126, * 3 (N.D. Ill.).

Plaintiffs (except for Plaintiff Thurston) allege that they are taxpayers who pay taxes to the United States, Pennsylvania, and Bradford County and that they "oppose government funding and support for indoctrination into any religious view." (Doc. 1, p. 3).  Further, they "object to and are offended by the use of their tax dollars to finance the [FF] program and thus to finance the [FF's] promulgation of its religious beliefs.  By so using tax dollars, Defendants have harmed and continue to harm" Plaintiffs.  (*Id.*, pp. 3-4).

_____

[6] As stated, the standing issue goes to whether Plaintiffs are entitled to have the Court address the merits of their claim.  *Storino*, 322 F. 3d at 296 (citation omitted).

As Defendant recognizes (Doc. 37, p. 11),since he is challenging standing as a factual matter in his Motion to Dismiss, Plaintiffs have the burden of showing by a reasonable probability that standing exists. *Id*. Plaintiffs' belief in and support of the doctrine of separation of church and state is sufficient to show taxpayer standing. *Id*. Here, Plaintiffs essentially allege that the DOJ awarded federal funds to Pennsylvania *via* PCCD from a federal Byrne grant, which funds in turn were awarded to Bradford County, which then contracted with and provided funding to FF. Plaintiffs claim that FF's program at BCP uses a significant amount of time to promote and indoctrinate enrolled inmates with its Christian religious beliefs. Thus, Plaintiffs claim that federal tax funds are being used to support FF's program and that this violates the Establishment Clause. Even accepting Plaintiffs' allegations as true for present purposes, including their averment that federal funds are being used by FF to promote Christianity, Plaintiffs must still show that their claimed injury is fairly traceable to the conduct of Defendant Gonzales.

The Court in *Digian v. Reno*, 1993 WL 372218, * 2 (E.D. Pa.), stated as follows:

> Article III of the United States Constitution limits the judicial power
> of the federal government to the resolution of "cases" and "controversies."
> U.S. Const., art. III, § 2. "As an incident to the elaboration of this
> bedrock requirement, [the Supreme Court] has always required that
> a litigant have 'standing' to challenge the action sought to be adjudicated
> in the lawsuit." *Valley Forge Christian College v. Americans United for*
> *Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)
> (*"Valley Forge"*); *See Lujan v. Defenders of Wildlife*, 112 S.Ct. 2130,
> 2136 (1992). Standing requires that a party show that he has suffered
> some actual or threatened injury as a result of a defendant's conduct,
> that the injury is fairly traceable to the challenged action, and that
> the injury is likely to be redressed by a favorable decision on the merits.
> *See Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99
> (1979); *see also Allen v. Wright*, 468 U.S. 737, 751, *reh'g denied,*
> 468 U.S. 1250 (1984); *Americans United For Separation of Church and*
> *State v. Regan*, 786 F.2d 194, 198-200 (3d Cir.), *cert. denied,*, *American*

*Baptist Churches v. Reagan*, 479 U.S. 914, *reh'g denied.* 479 U.S. 1012 (1986) ("*Americans United*").

When a plaintiff brings an action in his capacity as a taxpayer, he must allege injury which goes beyond any alleged effect upon plaintiff's tax burden. This type of harm is considered to be too "remote, fluctuating and uncertain" to constitute a cognizable injury sufficient to establish standing. *Valley Forge*, 454 U.S. at 477; *Frothingham v. Mellon*, 262 U.S. 447, 488 (1923). Distribution of public funds in an allegedly unconstitutional manner is not an injury sufficient to confer standing, even though the plaintiff contributes to the public coffers as a taxpayer. *Id.; Doremus v. Board of Education*, 342 U.S. 429, 433 (1952) ("This Court has held that the interests of a taxpayer in the moneys of the federal treasury are too indeterminable, remote, uncertain and indirect to furnish a basis for an appeal to the preventive powers of the Court over their manner of expenditure.").

The *Digian* Court then discussed the two-prong test as to federal taxpayer standing and stated:

The Supreme Court has developed a two-part test to determine when a plaintiff has standing to sue in his capacity as a federal taxpayer. *Fast v. Cohen*, 392 U.S. 83, 102-03 (1968). First, a plaintiff must allege the unconstitutionality of an exercise of congressional power taken under the Taxing and Spending Clause of Art. I, § 8, of the Constitution. *Id.* at 102. Second, a plaintiff must demonstrate that "the challenged enactment exceeds specific constitutional limitations upon the exercise of the taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8." *Id.* at 102-03; *see Valley Forge*, 454 U.S. at 478-79.

*Id.; Winkler, supra* at * 4-*5.

The Defendant seemingly concedes that Plaintiffs have met the first and second prongs of the *Flast* test. (Doc. 37, p. 13, ¶ 1, Doc. 73, p. 4). In any event, we find Plaintiffs have met both prongs, as Plaintiffs indicate in their Brief (Doc. 59, pp. 14-15), since our Plaintiffs have alleged that

DOJ, through the Byrne grant program, has funded FF's unconstitutional program at BCP, and since Plaintiffs have identified and challenged a specific federal expenditure program (*i.e.* Byrne grant program, 42 U.S.C. § 3751)[7], which they claim is in violation of the Establishment Clause.  *See Winkler, supra* at * 5 citing *Bowen v. Kendrick*, 487 U.S. 589 (1988), (Court held that "a federal taxpayer had standing to challenge grants made pursuant to the Adolescent Family Life Act ("AFLA") which allegedly violated the Establishment clause.").  *Id.*

Through their claim that DOJ awarded Byrne grant money to Pennsylvania, Plaintiffs have sufficiently shown that Defendant was implementing an exercise of Congress' taxing and spending power (Art. I, § 8, cl. 1).   Plaintiffs have established a nexus between their status as taxpayers and a congressional statute, the Byrne grant program.  (Doc. 59, pp. 6-7).  Plaintiffs also allege that the funding of FF's program, which is in part provided from DOJ's award to Pennsylvania of Byrne grant program money, is beyond the constitutional restrictions of Congress' tax and spend power, since Plaintiffs claim that FF's program indoctrinates Christian beliefs, in violation of the Establishment Clause.  Thus, both parts of the *Flast* test are met in our case.

However, as Defendant points out (Doc. 37, pp. 13-14), the inquiry does not end simply because both *Flast* hurdles have been satisfied.  As mentioned above, Plaintiffs must also show that their alleged injury is fairly traceable to Defendant's challenged conduct.  *See Digian, supra* at * 2. Defendant states that the decision to fund FF and its BCP program was not made by DOJ.  We agree with Defendant (Doc. 73, p.4) and find that if Defendant's (and DOJ's) involvement were

---

[7]Specific statutory provisions of the Byrne grant program are detailed in Plaintiffs' Statement of Material Facts. (Doc. 58, pp. 1-7).

imputed to the funding decisions of numerous local governments as to how Byrne grant funds are allocated once received from the state, the Defendant would be named in countless lawsuits throughout the country.

Both parties agree that Plaintiff's injury must be fairly traceable to Defendant. (Doc. 59, p. 15 & Doc. 37, pp. 13-14). However, the parties disagree on whether the award of Byrne grant funds to FF is traceable to Defendant Gonzales. Defendant argues that DOJ passed funds to Pennsylvania, which then passed the funds to Bradford County, which then awarded funds to FF through a contract, and that this scenario is not sufficient for Plaintiffs to show that their injury from FF's alleged improper use of the funds to promote religion and conduct religious activities is fairly traceable to him. The Defendant points out that DOJ passes funds to the state government and did not pass any funds directly to FF. This is not disputed. (Doc. 59, p. 16). However, Plaintiffs counter by stating that the purpose of Byrne grant funds is to provide government funds to private entities. Plaintiffs also indicate that regulations were enacted to promote awarding DOJ's funds to faith-based organizations. (*Id.*, p. 17). Further, it is not disputed that there is federal grant program at issue (Byrne grant program) that does provide federal funds to the States, which then award those funds to local governments, which then pass on portions of the funds to various initiatives, including the alleged faith-based organization here at issue, FF. We do not agree with Plaintiffs that *Flast* is determinative of the traceability issue presented in our case. Rather, we agree with Defendant's distinction of *Flast* from the present case. (Doc. 73, pp. 4-6). As Defendant argues (*Id.*), our Plaintiffs are not attacking the constitutionality of the Byrne grant program and his administration thereof, but are challenging the decision to fund FF's program at BCP. Defendant contends that

this decision to fund FF's program at BCP is not fairly traceable to him, and we concur.

Plaintiffs must show that there is causal connection between their injury and the Defendant's complained of conduct. As the *Storino* Court stated, "the injury must be fairly traceable to the challenged action of the Defendant and not the result of the independent action of some third party not before the court." *Storino*, 322 F. 3d at 296 (citations omitted); *Chadda v. Gillespie*, 139 Fed. Appx. 440 (3d Cir. 2005) (must be "a causal connection between the injury and the conduct complained of") (citations omitted). Also, as stated, Plaintiffs bear the burden of proving that they have standing. *Storino*, 322 F.3d at 296. We find an insufficient casual relationship between Plaintiffs' injury with respect to their funding claim and Defendant's challenged conduct. There is no causation attributed to any funding decision of Defendant Gonzales with regard to the alleged injury of Plaintiffs resulting from FF's program at BCP. Plaintiffs fail to show that their alleged injuries from FF's promotion and teaching of Christianity in its program at BCP, and from FF's discrimination by only employing Christians, were fairly traceable to any decision of Defendant Gonzales to provide Byrne grant money to FF.

The chain of events in this case, as Defendant recounts (Doc. 37, pp. 1-2, 8, 16), including the award of Byrne grant funds by DOJ to Pennsylvania through PCCD, which then sub-granted funds to Bradford County, whereupon the County contracted with FF to provide prison job training at BCP for compensation from the Byrne funds, is simply too tenuous a causal link between Plaintiff's Establishment Clause claim against the County and FF to be traceable to Defendant Gonzales. There is no claim that Defendant Gonzales had any role in the County's decision to award FF an exclusive contract to provide job training for inmates at BCP and to pay for FF's

14

services through Byrne grant funding.   *See Warth v. Seldin*, 422 U.S. 490, 504 (1975) (Plaintiffs must show that their alleged injury "reasonably can be said to have resulted, in [a] concretely demonstrable way, from respondents' alleged constitutional and statutory infractions."). It is undisputed that the DOJ funding in this case did not directly flow to FF and that such funding only flowed as a result of the independent decision of Bradford County. No personal involvement of Defendant Gonzales is alleged with respect to the decision of the County to contract with FF.

Here, we find that the stated injury Plaintiffs allege resulted from independent action of Bradford County through its decision to award FF an exclusive prison job training contract.[8] *See Rocks v. City of Phila.* 868 F.2d 644, 648 (3d Cir. 1989) (must show injury was the result of "the putatively illegal conduct of the defendant" and that the injury "fairly can be traced to the challenged action") (citations omitted). The alleged injury of Plaintiffs cannot be fairly traced to the challenged conduct of Defendant Gonzales regarding their funding claim. As stated, there is no causal link between the award of a contract to FF, which is paid from Byrne grant funds, and any decision made by DOJ or Defendant Gonzales. Defendant has shown that DOJ does not approve of any particular program that is funded by the local government. (Doc. 73, p. 8 and exhibit cited therein, Doc. 36, ¶ ).[9]  Thus, there is no causal connection between the alleged misuse of

_____

[8]We also agree with Defendant that there is no claim and no evidence that DOJ coerced either PCCD or Bradford County to fund FF with their Byrne grant award. (Doc. 73, p. 10).

[9]While Plaintiffs indicate that DOJ may award a Byrne grant directly to the local government (Doc. 58, p. 4, ¶ 7.), there is no claim in this case, and the record does not show, that DOJ directly allocated any Byrne grant funds to Bradford County.

government funds by FF and Defendant Gonzales.[10]   Further, we find that Plaintiffs' viable claims

against the remaining Defendants, including Defendant FF, who have a causal connection with the

decision to employ FF's services at BCP out of government funds, provide them with the proper

judicial remedy.[11]       As the Third Circuit in *Storino*, 322 F. 3d at 298, directed the Court to do, we

accept Plaintiffs' allegations as true and construe them in their favor, and find that Plaintiffs cannot

satisfy their burden of showing standing as to their funding claim against Defendant Gonzales since

they have not sufficiently alleged that their injury is fairly traceable to the challenged action of this

Defendant.  Rather, Plaintiffs have only claimed that their injury is traceable to the independent

funding decisions of the other Defendants in this case.

Thus, we shall recommend that Defendant Gonzales' Motion to Dismiss Plaintiff's funding

claim (Doc. 24), based on Plaintiffs' lack of standing as against him, be granted.

---

[10]According to Plaintiffs' pleading, Defendant FF receives most of its funding from the government to operate its vocational training program for inmates in BCP, which is the sole program at the prison providing vocational training to the inmates.  FF is a prison ministry with its mission, as described by Plaintiffs (Doc. 1, p. 12), as converting inmates to Christianity.  A contract exists between Bradford County and FF to operate its program at BCP.  It is also alleged that FF discriminates by only employing Christians.  Plaintiffs allege that the County has delegated to FF its authority over the supervision and rehabilitation of inmates in FF's program when they are working outside of the prison. (*Id*., pp. 22-23).  Plaintiffs also claim that despite being aware that FF is providing religious instruction and activity to inmates, the County and FF have conspired to continue the unconstitutional use of government funds to promote religion and religious discrimination.  (*Id*., pp. 23-24).

[11]As noted above, by separate Report and Recommendation, we have recommended that Defendant FF's Motion to Dismiss be denied with respect to Plaintiffs' Establishment Clause claim against it.

16

### D. Plaintiffs' Standing as to their Monitoring Claim against Defendant Gonzales.

As stated, the Plaintiffs also raise a monitoring claim against Defendant Gonzales. Plaintiffs allege that the failure of DOJ to monitor the Byrne grant money it awarded to Pennsylvania led to FF's use of government money to promote religion and to conduct religious activities in its program at BCP. Plaintiffs' alleged injury, *i.e.* FF using government money for its religious activities, must be fairly traceable to Defendant's complained conduct in order for them to have standing against Defendant with respect to their monitoring claim.

There is no dispute that BJA requires state and local government Byrne grant applicants to maintain auditing procedures. (Doc. 37, p. 5). Regulatory provisions regarding distribution of DOJ funds prohibit an organization from using federal funds received from DOJ to engage in religious activities. (*Id.*, p. 6). The regulations also require that Byrne grant recipients are subject to record-keeping, reporting and monitoring requirements and to submit reports to DOJ, including yearly reports detailing the activities of programs funded by the grant. (*Id.*, p. 7). BJA conducts site visits, including questioning of compliance with monitoring requirements of grants.

While we have found that Defendant Gonzales was not involved with the decision to contract with FF to provide its program to inmates at BCP, and that Defendant Gonzales played no role in Bradford County's decision to pay FF for its contracted services with its Byrne grant funds, we find that Plaintiffs' alleged injury is fairly traceable to Defendant's challenged conduct of failing to monitor FF's spending of Byrne grant funds on its religious activities. We also find that Defendant's complained of conduct (*i.e.* failure to monitor grant funds) is causally connected with FF's use of government money for its religious activities in its program at BCP. Thus, we conclude

17

that Plaintiffs' claimed injury regarding their monitoring claim, *i.e.* FF's use of government money to promote its religious activities and Christian indoctrination of inmates at BCP, is fairly traceable to Defendant Gonzales' challenged conduct, *i.e.* DOJ's failure to adequately monitor the spending of Byrne grant money by the recipient.  Therefore, we find that Plaintiffs have standing as to their monitoring claim against Defendant Gonzales and shall recommend that his Rule 12(b)(1) Motion be denied as to this claim.

### E.  Plaintiffs' Claim for Prospective Injunctive Relief as to all DOJ Grants

As stated above, Plaintiffs request an injunction requiring Defendants, including Defendant Gonzales, to monitor all grants given to any religious or faith-based organizations to ensure that such funds are not utilized in a manner violating the Establishment Clause.  (Doc. 1, ¶ 72.). Defendant argues that Plaintiffs only allege that the governmental funding of FF's program at BCP violates the Establishment Clause and that they do not challenge any other DOJ funding or grant program. (Doc. 73, p. 10).  Plaintiffs claim that they should be allowed discovery to see if they can establish that the federal government systematically and pervasively, through the Byrne grant program, violates the Establishment Clause.

We find that Plaintiffs lack standing to seek prospective injunctive relief as to all DOJ grant programs in which funds may be given to faith-based organizations.  This requested relief is well beyond Plaintiffs' claims in our case which relate to a specific program, *i.e* FF's job training program at BCP.  Plaintiffs have not identified any other program in their Complaint which they claim violates the Establishment Clause.  We find that in order for Plaintiffs, as federal taxpayers, to have standing as to other programs which receive Byrne grant funds, they must challenge a specific

program and allege how it violates the Establishment Clause.[12]

Further, Plaintiffs have not demonstrated that they are likely to suffer any future injury from Defendant Gonzales' conduct which would entitle them to the broad and sweeping prospective injunctive relief which they seek. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (plaintiff must show that he "'has sustained or is immediately in danger of sustaining some direct injury' as a result of the challenged official conduct" and the injury must be real and not speculative) (citations omitted); *Runkle v. Cohen*, 666 F. Supp. 700, 702 (M.D. Pa. 1986) (alleged injury cannot be abstract). Plaintiffs have failed to establish any real and immediate threat exist to them if Defendant fails to monitor all DOJ grants which are given to all faith-based organizations which will cause them to suffer a recognizable injury.

As the Court in *Davidson v. Stanley* stated, "[i]n order to establish state taxpayer standing, plaintiffs must show that the challenged activity involves 'a measurable appropriation' or loss of revenue, and 'a direct dollars-and-cents injury' to themselves." 2003 WL 21785151 at *7 (citations omitted). While Plaintiffs' Complaint alleges that BCP's relationship with Defendant FF involves a significant amount of appropriation and that their tax dollars have supported FF's program (Doc. 1, pp. 11, 16), Plaintiffs have not specifically challenged or identified any other faith-based program funded by the Byrne grant in this case. Nor have Plaintiffs shown how any other faith-based program has caused them to suffer any recognizable injury.

---

[12]We also find that permitting this case to go beyond FF's program at BCP and allowing Plaintiffs discovery as to all other unidentified faith-based organizations in the United States receiving Byrne grant funds in order to attempt to show that they violate the Establishment Clause would be completely unmanageable and would result in an unending discovery expedition.

In *Spencer v. Kemna*, 523 U.S. 1, 7 (1998), the Supreme Court held that "[t]he parties must continue to have a personal stake in the outcome of the lawsuit.  This means that, throughout the litigation, the Plaintiff must have suffered, or be threatened with, an actual injury traceable to the Defendant and likely to be redressed by a favorable judicial decision."  (Citations omitted).

We find that an Article III, § 2 case or controversy does not  exist regarding Plaintiffs' claim for injunctive relief against Defendant with respect to all DOJ grants to faith-based organizations since Plaintiffs do not claim to have suffered or to be threatened with an actual injury traceable to this Defendant with respect to any other programs  that is likely to be redressed by a favorable judicial decision.  *See Spencer*, 523 U.S. at 7.  Therefore, we shall recommend that Defendant's Motion to Dismiss  Plaintiffs' claim for prospective  injunctive relief as to all DOJ grants  be granted.

### F.  Merits of Plaintiffs' Monitoring Claim against Defendant Gonzales.

Defendant argues that, even if Plaintiffs are found to have standing as to their claim that DOJ did not sufficiently monitor the Byrne grant funds which were awarded to Bradford County and then used to pay FF for its program at BCP, this claim lacks merit (Doc. 37, p. 11 and p. 21), and he is entitled to summary judgment on this claim.  Defendant also argues that there is no basis to find that he violated the Establishment Clause as a result of any improper use of Byrne grant funds by FF. (*Id.*, p. 31).

Defendant argues that the Byrne grant program serves a secular purpose, that DOJ awards grant funds on a neutral basis, and that DOJ has set up sufficient safeguards to prevent the use of grant funds for religious purposes. (*Id.*, p. 21).  Defendant then articulates and analyzes the three-prong test annunciated in *Lemon v. Kurtzman*, 403 U.S. 602 (1971) to the Byrne grant program as

20

administered by DOJ and to the facts of our case. (Doc. 37, pp. 21-30).

As this Court in *Williams v. Bitner*, 285 F.Supp.2d 593, 600 (M.D. Pa. 2003), stated:

> In assessing whether a government action violates the prohibition against any "law respecting an establishment of religion," courts apply the three-prong test articulated in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). *See Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 334, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987); *Am. Civil Liberties Union of N.J. v. Schundler*, 104 F.3d 14335, 1440 (3d Cir. 1997). The *Lemon* test requires that government actions (1) have "a secular legislative purpose," (2) have a "principal or primary effect" that "neither advances nor inhibits religion," and (3) do not "foster excessive government entanglement with religion." *Lemon*, 403 U.S. at 612-13, 91 S.Ct. 2105 (internal quotation marks and citations omitted).

We agree with the Plaintiffs that, at this early stage of the case (*i.e.*, prior to commencement of discovery) the facts are disputed as to whether the Byrne grant program has the effect of advancing religion in our case. (Doc. 59, pp. 25-26). As Plaintiffs state, they are claiming that the Byrne grant program and the award of grant funds to PCCD, to Bradford County, and then to FF, has resulted in the actual use of government money to support religious activities and a particular religious viewpoint, *i.e.* Christianity. Clearly, the government may not support a particular viewpoint and "violations of this prohibition generally occur when government provides subsidies for a particular cause." *Id.* at 601 (citations omitted). On the contrary, "actions that limit interference with religious practice clearly do not 'entangle' government with religion." *Id.* (citation omitted).

Plaintiffs contend that the Court should, at a minimum, hold Defendant's summary judgment motion in abeyance in order to give them the opportunity to obtain discovery on their

monitoring claim and the question of whether Defendant Gonzales was in violation of the Establishment Clause.  (Doc. 59, p. 26).  We find it premature to apply the three-prong *Lemon* test to the facts of our case since we do not find them to be undisputed at this early juncture, particularly as to what effect the Byrne grant program had on promoting Christianity through FF's program at BCP.  We also find that Plaintiff's allegation that Defendant Gonzales did not use his authority to stop the Establishment Clause violation by Bradford County and FF and the notice issue are factual matters requiring discovery.  We thus find Plaintiffs' request to be prudent, and in the interest of fairness, we shall recommend that Defendant's summary judgment motion with respect to Plaintiff's monitoring claim and alleged violation of the Establishment Clause be denied at this juncture of the case without prejudice to re-file it following discovery.  We further find no prejudice to Defendant by allowing Plaintiffs discovery on the monitoring claim and alleged Establishment Clause violation by Defendant Gonzales.[13]  *See McCallum*, *supra*. (Court, upon cross summary judgment motions, found funding stream to Faith Works program by Department of Workforce Development grant at state prison, which used unrestricted direct state funds to provide alcohol and drug counseling and employment training for inmates as well as the indoctrination and promotion of religion, violated Establishment Clause.  The Court found it necessary to hold a trial as to plaintiffs' Establishment Clause claim with respect to Department of Corrections' funding of Faith

---

[13]Defendant can rely on the summary judgment documents he has already filed if he so desires and supplement them with any additional information following discovery.

Further, unlike the standing issue, which is a legal issue and thus proper to be raised in a motion to dismiss, despite no discovery, as it goes to the Court's subject matter jurisdiction, *Page v. Schweiker*, 786 F.2d 150, 153 (3d Cir. 1986).  We find that the issue regarding the merits of Plaintiffs' monitoring claim and whether there is a violation of the Establishment Clause by use of the Byrne grant funds in our case requires discovery prior to a decision.

Works, which engaged in religious indoctrination, to determine if funding was direct or indirect since facts were disputed as to whether inmates enrolled in Faith Works by their own independent and private choice).

## V.  Recommendation.

Based on the foregoing, it is respectfully recommended that Defendant Gonzales' Motion to Dismiss **(Doc. 24)** be granted with respect to Plaintiffs' funding claim and that this Defendant be dismissed based on lack of subject matter jurisdiction to address the merits of Plaintiffs' funding claim as against him.  It is recommended that Defendant Gonzales' Motion to Dismiss Plaintiffs' monitoring claim for lack of standing be denied.  It is also recommended that Defendant's Motion be granted with respect to the dismissal of Plaintiffs' request for prospective injunctive relief to require Defendant to monitor all DOJ grants awarded to faith-based organizations. (Doc. 1, ¶ 72.). It is further recommended that Defendant Gonzales' Summary Judgment Motion with respect to Plaintiffs' monitoring claim and alleged violation of the Establishment Clause be denied without prejudice to re-file it after discovery.  Finally, it is recommended that this case be remanded to the undersigned for further proceedings, including the scheduling of a Joint Case Management Conference (after Defendants FF and Gonzales file their Answers to the Complaint) and for discovery.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 3, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLARK MOELLER and                    :
JANE MOELLER, et al.,                :
                                     :     CIVIL ACTION NO. **3:CV-05-0334**
                                     :
                Plaintiffs           :     (Judge Munley)
                                     :
                v.                   :     (Magistrate Judge Blewitt)
                                     :
BRADFORD COUNTY, et al.,             :
                                     :
                                     :
                Defendants           :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **November 3, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                               **s/ Thomas M. Blewitt**
                               **THOMAS M. BLEWITT**
                               **United States Magistrate Judge**


**Dated: November 3, 2005**