## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLARK MOELLER; JANE MOELLER;** | : | **No. 3:05cv334** |
| **JEFFREY GONZALEZ; LAURA BLAINE;** | : | |
| **KRIS SCHWENKE; and TIM THURSTON,** | : | **(Judge Munley)** |
| **Plaintiffs** | : | |
| **v.** | : | |
| | : | |
| **BRADFORD COUNTY; CAROL L.** | : | |
| **LAVERY,** *in her official capacity as* | : | |
| *Acting Director of the Pennsylvania* | : | |
| *Commission on Crime and Delinquency*; | : | |
| **ALBERTO GONZALEZ,** *in his official* | : | |
| *capacity as Attorney General of the United* | : | |
| *States*; **THE FIRM FOUNDATION OF** | : | |
| **AMERICA, d/b/a THE FIRM** | : | |
| **FOUNDATION OF BRADFORD COUNTY;** | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the Court for disposition are objections to two Reports and Recommendations from United States Magistrate Judge Thomas M. Blewitt, each disposing of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The first suggests that we grant Defendant Firm Foundation of America's motion in part and deny it in part, and the second suggests we dispose of Defendant Alberto Gonzalez's motion in the same manner. The Firm Foundation and Defendant Bradford County have filed objections to the first Report and Recommendation, and Plaintiffs have filed an objection to one portion of the second. These matters have been fully briefed and are ripe for disposition. For the following reasons, we will overrule the defendants' objections and adopt the first Report, and we will sustain the Plaintiffs' objection to the second.

## I.     Background[1]

The Firm Foundation received federal, state, and local government funding to operate

a vocational training program for inmates in the Bradford County Correctional Facility,

which is the jail for Bradford County, Pennsylvania.   The program not only provides

vocational training, but spends a significant amount of time and resources on religious

discussions, religious lectures, and prayer.  The Firm Foundation describes its program as a

prison ministry.  It requires its staff to adhere to Christian beliefs and to share these beliefs

when the opportunity arises.  The Firm Foundation routinely proselytizes to the inmates in

the vocational training program, and does not make an effort to segregate government funds

for the purely secular purpose of vocational training.  This program is the only program

available to Bradford County inmates that provides vocational training or teaches

employment skills.

The Firm Foundation received funds derived from a federal grant under the

Workforce Investment Act from the United States Department of Labor.  The Department of

Labor awarded the funds to the Team Pennsylvania Workforce Initiative Board, which

manages the funds in Pennsylvania.  The Pennsylvania Board then awarded a portion those

funds as a sub-grant to the Northern Tier Regional Planning and Development Commission.

The Regional Commission then granted some of those funds to the Firm Foundation.

The Firm Foundation also received funds from Bradford County and the Pennsylvania

---

[1] The following background facts are derived from the Complaint (Doc. 1).

Commission on Crime and Delinquency.  The County applied to the Commission on Crime

for funds for the Firm Foundation, and, under the authority of Defendant Carol L. Lavery, the

Commission on Crime approved the application.  The County and the Firm Foundation then

signed a contract governing payment of the grant.  In the middle of 2004, the County applied

to the Commission on Crime for a continuation grant.  Again, the funds were approved, but

on this occasion some of the funds came from the Federal Drug Control and System

Improvement Program, and the remaining money came from state funds.  Additionally, the

Firm Foundation inmates received hourly wages from Bradford County Action, which

received the funds from the Regional Commission, which received the funds under the

Workforce Investment Act.

Plaintiffs Clark Moeller, Jane Moeller, Jeffrey Gonzalez, Laura Blain, and Kris

Schwenke are residents of Bradford County who pay taxes to the United States, the

Commonwealth of Pennsylvania, and Bradford County.  Each objects to the Firm

Foundation's use of taxpayer funds for a religious purpose.  Plaintiff Tim Thurston is a

resident of Bradford County, a former inmate of the jail, and a former participant in the Firm

Foundation's program.

On February 17, 2005, Plaintiffs filed the instant three count Complaint.  In Count I,

they allege that the government's support of the Firm Foundation violates the Establishment

Clause of the First Amendment to the United States Constitution.  In Count II, they allege the

support violates Section Three of the Declaration of Rights of the Pennsylvania Constitution.

3

In Count III they allege the support violates Section 29 of Article II of the Pennsylvania

Constitution.  Plaintiffs seek an injunction prohibiting the defendants from funding the Firm

Foundation so long as the program continues its religious instruction and activity, religious

coercion of inmates, or discrimination in employment.  Plaintiffs also seek an injunction

requiring Bradford County, Carol Lavery, and Defendant Alberto Gonzalez, the United

States Attorney General, to monitor all grants given to faith based organizations to ensure

that the funds are not used in a manner prohibited by the United States or Pennsylvania

Constitutions.  They seek a declaration that providing funds that flow to the Firm Foundation

without adequately monitoring the use of the funds violates the United States and

Pennsylvania Constitutions.  They also seek monetary damages for the recoupment of the

funds used for religious purposes, and finally, they seek nominal damages.

## II.     Jurisdiction

As this case is brought pursuant to the Establishment Clause of the First Amendment

of the United States Constitution, we have jurisdiction under 28 U.S.C. § 1331 ("The district

courts shall have original jurisdiction of all civil actions arising under the Constitution, laws,

or treaties of the United States.").  We  have supplemental jurisdiction over the plaintiffs'

state law claims pursuant to 28 U.S.C. § 1367.

## III.    Standard

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are

tested.  The issue is whether the facts alleged in the complaint, if true, support a claim upon

which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). "A court should not dismiss a complaint under Rule 12(b)(6) for failure to state a claim for relief 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.'"  Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## IV.    Discussion

The Firm Foundation and Alberto Gonzalez have each filed a motion to dismiss. Magistrate Judge Blewitt issued a Report and Recommendation proposing that we grant the Firm Foundation's motion in part and deny it in part, and issued a separate Report and Recommendation suggesting that we also grant Gonzalez's motion in part and deny it in part. The Firm Foundation objected to the first Report and Recommendation, and Plaintiffs objected to the second.  We will address the two seperately.

## A.    The Firm Foundation

Before Magistrate Judge Blewitt, the Firm Foundation argued Plaintiffs failed to state a claim upon which relief may be granted because: 1) it was not a state actor, and thus the constitutional claims must fail; 2) Plaintiffs have no private cause of action to enforce any right under the Pennsylvania Constitution; 3) Plaintiffs, as taxpayers, cannot recover nominal

5

damages for the violation of their rights under the Establishment Clause; and 4) Plaintiff

Thurston's claims for declaratory and injunctive relief are moot because he is no longer an

inmate.

Magistrate Judge Blewitt found: 1) the Complaint sufficiently alleged that the Firm

Foundation was a state actor; 2) we should decline to exercise supplemental jurisdiction over

the state constitutional claims because they present novel issues of state law; 3) Plaintiffs

may recover nominal damages; and 4) Plaintiff Thurston's claims for injunctive relief and

declaratory judgment are moot.  The Firm Foundation objects to the first and third

conclusions.[2]  In disposing of the objections we make a *de novo* determination of those

portions of the report to which the objections are made.  28 U.S.C. § 636 (b)(1)(C); see also

Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  We may accept, reject, or modify,

in whole or in part, the findings or recommendations made by the magistrate.[3]  For the

---

[2] The Firm Foundation and Bradford County also objected to Magistrate Judge Blewitt's characterization of the Firm Foundation as having a primary mission to convert inmates.  Not only is this ultimately irrelevant to the disposition of the issues at this stage, Magistrate Judge Blewitt accurately portrays the Complaint.  It specifically states that the Firm Foundation proselytized. (Compl. ¶ 12).  "Proselytize: to induce someone to convert to one's faith."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 937 (10th ed. 1999).  The complaint also specifically states, "Program personnel make statements to inmates that pressure inmates to express professions of faith and adopt the specific Christian beliefs of the Firm Foundation" (Compl. ¶ 29).  Thus, Magistrate Judge Blewitt accurately characterized the Complaint's allegations.

[3] For those portions to which no objections have been filed, we must determine whether a review of the record evidences plain error or manifest injustice.  See, e.g., Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983); FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1).  We find no plain error or manifest injustice, and therefore we will adopt these portions.

reasons that follow, we will overrule the Firm Foundation's objections,[4] and will adopt the

Report and Recommendation in full.

**1.     State Actor**

A 42 U.S.C. § 1983 plaintiff must establish: 1) the defendants deprived him of a

federally protected constitutional or statutory right, and 2) the defendants acted under color

of state law.  Lugar v. Edmonson Oil Co., 457 U.S. 922, 931 (1982).   The Firm Foundation

argues that Magistrate Judge Blewitt erred in finding that Plaintiffs have sufficiently alleged

that it acted under color of law.  Plaintiffs argue that the Firm Foundation performed a

traditionally public function of supervising and controlling inmates, and therefore is a state

actor.

To demonstrate that a private entity acted under color of state law, two elements must

be present.  First, the alleged constitutional deprivation resulted from either: a) an exercise of

a right or privilege having its source in state authority; or b) a rule of conduct imposed by the

State or a person for whom the state is responsible.  Id. at 937.  Second, the defendant

"'could be described in all fairness'" as a state actor.  Brown v. Philip Morris Inc., 250 F.3d

789, 801 (3d Cir. 2001) (quoting Edmonson v. Leesville Concrete Co., 500 U.S. 614, 620

(1991)).  Any of the following three conditions satisfies this element: a) the defendant "is a

state official," b) the defendant "acted together with or obtained significant aid from state

officials," or c) the defendant's "conduct is otherwise chargeable to the State."  Lugar, 457

---

[4] For the same reasons, we will overrule Bradford County's objections.

7

U.S. at 937.

The Supreme Court has employed several tests to determine whether a private party's

actions are "otherwise chargeable to the State," and thus "convert the party into a state actor."

Id. at 937-38.  These include the "public function" test, the "state compulsion" test, the

"nexus" test, and the "joint action" test (Id. at 938-39), as well as the "symbiotic

relationship" test.  Brown, 250 F.3d at 801.  Plaintiffs rely on the public function analysis.[5]

> Under the public function test, 'when private individuals or groups are
> endowed by the State with powers or functions governmental in nature, they
> become agencies or instrumentalities of the State and subject to its
> constitutional limitations.' . . . The provision of municipal services is a
> traditional public function for which a private party can be held accountable as
> a state actor.

 Robison v. Canterbury Village, Inc., 848 F.2d 424, 427 (3d Cir. 1988) (quoting Evans v.

Newton, 382 U.S. 296, 299 (1966)).

Moreover, it is not enough that a private group serves a public function; instead, "the

question is whether the function performed has been 'traditionally the exclusive prerogative

of the State.'"  Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982) (citations omitted).

The Complaint alleges, "The County has delegated to the Firm Foundation the

performance of a traditionally public function - the supervision and rehabilitation of jail

inmates.  For these reasons, the conduct of the Firm Foundation may fairly be treated as

conduct of the state itself."  (Compl. ¶ 18).   Under some circumstances, private actors

working within a prison system are state actors.  See West v. Atkins, 47 U.S. 42, 54-55

---

[5] We also find that Plaintiffs' allegation that the Firm Foundation conspired with Bradford
County sufficient to support a claim that they were joint actors.  (Compl. ¶ 61).

(1988) (holding that a prison doctor was state actor because he performed a function that was traditionally the exclusive prerogative of the State); Rosborough v. Management & Training Corp., 350 F.3d 459, 460-61 (5th Cir. 2003) (holding that private prison management companies and their employees are state actors); Skelton v. Pri-Cor, Inc., 963 F.2d 100, 101-02 (6th Cir. 1991) (holding that a private company managing a prison is a state actor because it performs a public function).

Defendants attempt to factually distinguish these cases.  This effort is premature at this stage of the litigation because we must take every fact as true and take all inferences in Plaintiffs' favor.  Thus, it is sufficient that we find there is some set of facts Plaintiffs could prove that would entitle them to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Accordingly, we find Plaintiffs have stated facts upon which relief may be granted and we will overrule the objection.

## 2.    Nominal Damages

The Firm Foundation argues that Plaintiffs cannot recover nominal damages and the appropriate remedy instead is injunctive or declaratory relief.  Bradford County has joined in this objection.  They both argue that Plaintiffs have failed to plead an Establishment Clause violation, and even if they have, nominal damages are not an available remedy.

### a.    Establishment Clause Violation

We find that Plaintiffs have sufficiently stated an Establishment Clause violation. Bradford and the Firm Foundation argue that the vocational program in the prison is not

9

sufficiently coercive to support this claim.  They explain that the prison does not require prisoners to participate in the Firm Foundation's program, and thus even though the prison offers no alternative vocational or education training, it is not sufficiently coercive to violate the Establishment Clause.  Magistrate Judge Blewitt relied on <u>Lee v. Weisman</u>, 505 U.S. 577 (1992) in finding that Plaintiffs allege that the program was sufficiently coercive.  Bradford distinguishes <u>Lee</u> because the plaintiffs there were high school students, who are particularly impressionable and vulnerable to subtle coercive pressures, whereas the present case deals with adults.

This distinction is not fatal to Plaintiffs' claim.  "Congress shall make no law respecting an establishment of religion."  U.S. CONST. amend I.  The Establishment Clause requires that the "government may not promote or affiliate itself with any religious doctrine or organization, may not discriminate against persons on the basis of their religious beliefs and practices, may not delegate a governmental power to a religious institution, and may not involve itself too deeply in such an institution's affairs."  <u>Allegheny v. ACLU, Greater Pittsburgh Chapter</u>, 492 U.S. 573, 590-91 (1988).  In <u>Lee</u>, the unique impressionability of children was relevant to the coercive effect of government action in question.  505 U.S. at 581.  There, the plaintiffs challenged a school policy that included prayer in the middle school and high school graduation ceremonies.  <u>Id.</u>  Although participation in the prayer was not required, the Court found that public and peer pressure in the school setting upon children and teenagers gave the prayer policy an unacceptable coercive effect.  <u>Id.</u> at 593-94.

Furthermore, the importance of the graduation ceremony to a youth rendered the option to skip the ceremony unavailable for all practical purposes.  Id. at 594-95.

Lee, however, does not limit impermissible coercion to teenagers, but establishes "[c]oercion is impermissible when it takes the form of 'subtle coercive pressure' that interferes with an individual's 'real choice' about whether to participate in worship or prayer."  Destefano v. Emergency Housing Group, Inc., 247 F.3d 397, 412 (2d Cir. 2001) (quoting Lee, 505 U.S. at 592).  "The fulcrum of this inquiry, we think, is individual conscience and free will."  Id.  In Destefano, the state provided funding to an alcohol detoxification and treatment facility.  Id. at 402.  The treatment program included Alcoholics Anonymous meetings, which involved prayer in treatment.  Id. at 402-03.  The court found that the level of coercion presented a triable issue of fact, even though patients were not forced to seek treatment at all.  Id. at 413.

> The 'choice' between forgoing the alcohol treatment provided by the State and coping with one's alcoholism without professional assistance or with assistance at substantial expense or inconvenience, on the one hand, and availing oneself of that treatment and thereby 'facing a personally offensive religious ritual,' on the other, may be no choice at all.

Id. (quoting Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 312 (2000)).

Similarly, the choice between foregoing educational and vocational training in prison or enduring the Firm Foundation's efforts to proselytize may be no choice at all.  Thus, Plaintiffs have stated facts upon which relief may be granted and we will overrule the

11

objection and adopt this portion of the Report and Recommendation. [6]

**b.    Appropriate Remedy**

The Firm Foundation argues that even if Plaintiffs can establish a violation of the

Establishment Clause, they cannot recover nominal damages and would be entitled only to

injunctive or declaratory relief.  The Firm Foundation recognizes that a plaintiff can recover

nominal damages for a violation of a constitutional right, Carey v. Piphus, 435 U.S. 247, 254

(1978), but argues that the Establishment Clause does not create an individual constitutional

right, and instead is a structural restraint on the government.  It further argues that Plaintiffs

cannot recover nominal damages because their standing is not based on a personal injury, but

rather on taxpayer standing.

These arguments lack  merit.  Numerous courts have found nominal damages an

appropriate remedy for a violation of the rights protected by the Establishment Clause.

O'Connor v. Washburn University, 416 F.3d 1216, 1222 (10th Cir. 2005); Searles v. Van

Bebber, 251 F.3d 869, 878-79 (10th Cir. 2001); Warner v. Orange County Dep't of

Probation, 115 F.3d 1068, 1077 (2d Cir. 1996).

Moreover, that Plaintiffs rely on their position as taxpayers as the basis for standing

---

[6] Additionally, a coercive effect may be sufficient to establish an Establishment Clause violation, but it is not necessary.  Lee, 505 U.S. at 604 (Blackmun, J. concurring) ("Although our precedents make clear that proof of government coercion is not necessary to prove an Establishment Clause violation, it is sufficient.  Government pressure to participate in a religious activity is an obvious indication that the government is endorsing or promoting religion.").  Thus, even if the coercive effect on prisoners is not sufficient, Plaintiffs may be able to prove an Establishment Clause violation through other means.

does not preclude recovery of nominal damages.  "[N]ominal damages are the appropriate

means of 'vindicating' rights whose deprivation has not caused actual, provable injury."

Memphis Community School District v. Stachura, 477 U.S. 299, 308 n.11 (1986) (citing

Carey, 435 U.S. at 266).

> Common-law courts traditionally have vindicated deprivations of certain
> 'absolute' rights that are not shown to have caused actual injury through the
> award of a nominal sum of money.  By making the deprivation of such rights
> actionable for nominal damages without proof of actual injury, the law
> recognizes the importance to organized society that those rights be scrupulously
> observed.

Carey, 435 U.S. at 266.

Thus, the availability of nominal damages is not based on the severity of the injury,

but is based on the importance of the observance of the right in question.  We need not detail

the importance of the Establishment Clause, as this is not in debate.  Thus, we find that

Magistrate Judge Blewitt did not err in holding that Plaintiffs can recover nominal damages.

### B.     Defendant Gonzalez's Motion

Defendant Gonzalez, sued in his official capacity as the Attorney General of the

United States, also moved to dismiss Plaintiffs' claims.  First, he divided Plaintiffs'

allegations against him into two categories: 1) the federal government disbursed funds that

flowed to the Firm Foundation which used them for religious purposes; and 2) the federal

government failed to monitor the use of the federal funds or enforce safeguards to ensure that

the funds were not used for religious activities and purposes.  He characterized these

allegations as constituting separate 'funding' and 'monitoring' claims, although the

13

Complaint does not characterize two different claims and advances only one § 1983 claim against Gonzalez.

After separating the allegations, Gonzalez argued that: 1) Plaintiffs have no standing to advance the funding claim; 2) they have no standing to request injunctive relief as to all future Department of Justice (DOJ) grants; and 3) he is entitled to summary judgment on the merits of the monitoring claim. Magistrate Judge Blewitt agreed that Plaintiffs have no standing to advance the funding claim and may not request injunctive relief as to all future DOJ grants, but found it premature to decide the merits of the monitoring claim, and suggested we deny the summary judgment motion without prejudice. Plaintiffs object solely to the portion of the Report and Recommendation that suggests we dismiss the funding claim for lack of standing. Gonzalez filed no objection.[7]

Thus, the sole issue before this Court is whether Magistrate Judge Blewitt erred when he agreed with Gonzalez that Plaintiffs have no standing to bring their funding claim because their injury is not sufficiently traceable to Gonzalez. Magistrate Judge Blewitt observed that the DOJ did not provide funds directly to the Firm Foundation, but rather it provided funds to a Commonwealth of Pennsylvania agency, which provided them to another agency, which

---

[7] Thus, neither party objected to the disposition of the latter two parts of Gonzalez's motion. For these portions to which no objections have been filed, we must determine whether a review of the record evidences plain error or manifest injustice. See, e.g., Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983); FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1). We find no plain error or manifest injustice, and therefore we will adopt the portions to which no objections have been filed.

funded the Firm Foundation.  Thus, he concluded the causal link between Gonzalez's

conduct and Plaintiffs' injury was too attenuated to support Plaintiffs' standing.  For the

reasons that follow, we disagree with Magistrate Judge Blewitt, and will sustain Plaintiffs'

objection to the Report and Recommendation.[8]

     The standing doctrine derives from Article III of the United States Constitution, which

limits the judicial power of the United States to "resolution of 'case' and 'controversies.'"

Valley Forge Christian College v. Americans United For Separation of Church and State,

Inc., 454 U.S. 464, 471 (1982).   Although the standing doctrine covers both constitutional

and prudential considerations, "at an irreducible minimum, Art. III requires the party who

invokes the court's authority to 'show that he personally has suffered some actual or

threatened injury as a result of the putatively illegal conduct of the defendant, . . .that the

injury 'fairly can be traced to the challenged action' and is likely to be redressed by a

favorable decision."  Id. at 472 (internal citations omitted).   Gonzalez argues that Plaintiffs'

claims cannot satisfy the second element, traceability.  We disagree.

     As a preliminary matter, we will not separate the Complaint's single § 1983

Establishment Clause claim into a 'monitoring' and 'funding' claim for the purposes of

determining standing.  The Complaint alleges that the combination of the funding with the

failure to monitor the funds violated the Establishment Clause.  "[D]efendants Bradford

---

[8] Magistrate Blewitt addressed the standing issue on the pleadings, and therefore we will as well.  At the pleading stage, general factual averments of injury resulting from the defendants' conduct are sufficient, and we must take the alleged facts as true.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

County, Anderson, and Gonzalez violated the U.S. and Pennsylvania Constitutions by providing government funds to the Firm Foundation <u>and</u> by failing to provide adequate monitoring of the Firm Foundation's use of those funds" (Compl. ¶ 73) (emphasis added). Thus, separation of the funding from monitoring allegations would conflict with the Complaint.

More important, viewing each aspect of the alleged improper conduct without regard to the remaining allegations conflicts with the purpose of the standing doctrine.  If we ignore some part of Gonzalez's conduct, we will not be able to properly determine whether the parties are sufficiently adverse.

> The fundamental aspect of standing is that it focuses on <u>the party</u> seeking to get his complaint before a federal court and <u>not on the issues</u> he wishes to have adjudicated.  The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues.

<u>Flast v. Cohen</u>, 392 U.S. 83, 99 (1968) (emphasis added).

Thus, we must focus on whether Plaintiffs' injuries are sufficiently traceable to Gonzalez's conduct on the whole, not whether the injuries are sufficiently traceable to a particular alleged improper action.[9]  "[W]hen standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable."  <u>Id.</u> at 99-100.  The particular

---

[9] As a practical matter it makes no sense to analyze the monitoring claim without also considering the funding.  Plaintiffs do not allege that Gonzalez must monitor the Firm Foundation's use of all funds no matter their source, but the Establishment Clause only becomes an issue because he allegedly failed to monitor the federal government's funding.

issue sought to be adjudicated in this case is whether Gonzalez's conduct violated the

Establishment Clause, and thus we must determine whether Plaintiffs are the proper parties to

raise this issue.

Gonzalez argues that the Plaintiffs are not sufficiently adverse to the DOJ because the

DOJ played no part in the decision to fund the Firm Foundation.  Rather, the money passed

from the DOJ through two state agencies before a state agency provided the money to the

Firm Foundation.  We find that Plaintiffs' injuries are sufficiently traceable to the DOJ, and

thus Plaintiffs have standing.

In Flast v. Cohen, the United States Supreme Court established that federal taxpayers

have standing to challenge exercises of the taxing and spending power under Article I section

8 of the United States Constitution that violate the Establishment Clause.  392 U.S. 83, 105-

06 (1968).  A group of taxpayers challenged expenditures of federal funds under Titles I and

II of the Elementary and Secondary Education Act of 1965 (ESEA).  Id. at 85.  They sued the

executive branch officials charged with administering the funds in their official capacities,

including the Secretary of Health, Education, and Welfare.  Id.  The ESEA provided

educational assistance to low income families, and distributed the funds through federal

payments to state educational agencies, which passed the payments to local educational

agencies.  Id. at 86.  The court noted that the crux of the standing issue was whether the

parties where sufficiently adverse, and then enumerated the circumstances where a taxpayer

has standing.  Id. at 101.

> A taxpayer will be a proper party to allege the unconstitutionality only of exercises of constitutional power under the taxing and spending clause of Art. I § 8 of the constitution. . . . . Secondly, the taxpayer must establish that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8.

Id.

Thus, the Court found that the plaintiffs had standing because they challenged an exercise of congressional power under Art I. § 8, and alleged "that the challenged expenditures violate the Establishment and Free Exercise Clauses." Id. Significantly, the Court found Plaintiffs had standing even though the defendants did not directly fund the religious activity, and the money flowed through intermediaries.

In Bowen v. Kendrick, the Court reaffirmed Flast and taxpayer standing to challenge government expenditures pursuant to Article I, section 8. 487 U.S. 589 (1988). A group of taxpayers sued the Secretary of Health and Human Services, challenging the Adolescent Family Life Act (AFLA) on its face and as-applied because religious groups carried out the programs. Id. at 597-98. The Court inquired whether the taxpayers had standing to bring their as-applied challenge under the Flast framework. Id. at 618. The government argued that the plaintiffs had no standing because the as-applied challenge did not attack the taxing and spending power under Article I § 8 because it challenged the executive branch's administration of funds. Id. at 619. The Court disagreed. "We do not think, however, that appellee's claim that AFLA funds are being used improperly by individual grantees is any less a challenge to congressional taxing and spending power simply because the funding

18

authorized by Congress has flowed through and been administered by the Secretary." <u>Id.</u>
Thus, the injury is the exercise of the taxing and spending power.  Indeed, the Court found
that the plaintiffs could establish an as-applied violation if they were able to show "aid <u>is</u>
<u>flowing</u> to grantees that can be considered 'pervasively sectarian.'" <u>Id.</u> at 621 (emphasis
added).

Recently, in <u>Freedom From Religion Foundation v. Chao</u>, a group of taxpayers
complained that money appropriated by Congress under Article I section 8 was used by
various executive-branch agencies to fund conferences to promote the President's "Faith-
Based and Community Initiatives." – F.3d – , 2006 WL 73404, at *5 (7th Cir. Jan. 13, 2006).
The complaint alleged that the conferences were designed to promote religious organizations
over secular ones.  <u>Id.</u> at *5.  The complaint, however, could not identify a specific
congressional appropriation or statute that earmarked the funds for the conferences.  <u>Id.</u>
Rather, the conferences were entirely conceived of and run by the executive, and the funds
were obtained from appropriations for general administrative expenses.  <u>Id.</u>  The court found
this distinction from <u>Flash</u> and <u>Bowen</u> irrelevant for the purposes of standing.  <u>Id.</u>  It
observed that the complaint alleged that "the conferences are funded by money <u>derived </u>from
appropriations, which means from exercises of Congress's spending power rather than from,
say, voluntary donations from private citizens."  <u>Id.</u>  (emphasis added).  Thus, to establish
standing, taxpayers need not "show that a statute violated the establishment clause, all they
had to show was the a statute enacted pursuant to Congress's taxing and spending powers

under Art. I, section 8 had been necessary for the violation to occur, it did not have to be

sufficient." Id. at *4.

Contrary to Gonzalez's assertion, Plaintiffs' claim against him does not challenge the

decision to expend funds on religious activity, but it challenges the disbursement of funds.

Just as in Bowen, Plaintiffs claims "call into question how the funds authorized by Congress

are being disbursed." Bowen, 487 U.S. at 620.   Plaintiffs allege Gonzalez provided funds to

state agencies and enforced no restrictions on the use of the money.  As a result, federal tax

dollars were used to proselytize.  Thus, the injury, the expenditure of Plaintiffs' tax dollars, is

directly traceable to Gonzalez.  Whether or not the administration of the funds has the

requisite connection to religion to violate the Establishment Clause is ultimately a question

on the merits, and not a question of standing.[10]  Thus, we find that Plaintiff's injury is

sufficiently traceable to Gonzalez's conduct for standing purposes.

## IV.    Conclusion

We will adopt in full the Report and Recommendation on Defendant Firm

Foundation's motion.  Plaintiffs' state constitutional claims will be dismissed, as will

Plaintiff Thurston's claims for injunctive and declaratory relief.  We will adopt the second

Report and Recommendation in part.  As proposed, Plaintiffs' claim for injunctive relief as to

---

[10] The administration of funds will violate the Establishment Clause if it "promote[s] or affiliate[s] [the government] with any religious doctrine or organization . . .discriminate[s] against persons on the basis of their religious beliefs and practices, . . . delegate[s] a governmental power to a religious institution, . . .[or]  involve[s] itself too deeply in such an institution's affairs." Allegheny v. ACLU, Greater Pittsburgh Chapter, 492 U.S. 573, 590-91 (1988).

all future DOJ grants will be dismissed and we will deny Gonzalez's motion for summary

judgment on the merits of Plaintiffs' Establishment Clause claim without prejudice.  We will

allow Gonzalez to re-file his summary judgment motion following discovery.  We will not,

however, dismiss the 'funding' aspect of the Establishment Clause claim because we find

Plaintiffs have standing as taxpayers to challenge the Gonzalez's administration of the funds.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLARK MOELLER; JANE MOELLER;** | : | **No. 3:05cv334** |
| **JEFFREY GONZALEZ; LAURA BLAINE;** | : | |
| **KRIS SCHWENKE; and TIM THURSTON,** | : | **(Judge Munley)** |
| **Plaintiffs** | : | |
| **v.** | : | |
| | : | |
| **BRADFORD COUNTY; CAROL L.** | : | |
| **LAVERY,** *in her official capacity as* | : | |
| *Acting Director of the Pennsylvania* | : | |
| *Commission on Crime and Delinquency*; | : | |
| **ALBERTO GONZALEZ,** *in his official* | : | |
| *capacity as Attorney General of the United* | : | |
| *States*; **THE FIRM FOUNDATION OF** | : | |
| **AMERICA, d/b/a THE FIRM** | : | |
| **FOUNDATION OF BRADFORD COUNTY;** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 10th day of February 2006, it is hereby **ORDERED** that:

1) The Report and Recommendation (Doc. 89) is **ADOPTED**; the Objections (Doc. 94, 95, 96) are **DENIED**; and the Firm Foundation's Motion to Dismiss (Doc. 23) is **GRANTED** in part and **DENIED** in part.  It is granted to the extent it seeks dismissal of Plaintiffs' state claims and Plaintiff Thurston's claims for injunctive and declaratory relief.  It is denied in all other respects.

2) The Report and Recommendation (Doc. 93) is **ADOPTED** in part, and the Objection (Doc. 97) is **SUSTAINED**.  We decline to adopt the portion of the Report and Recommendation that proposes that we dismiss Plaintiffs' 'funding' claim against Defendant Alberto Gonzalez, as described in the above opinion.  Defendant Gonzalez's Motion to Dismiss (Doc. 24) is **GRANTED** in part and **DENIED** in part.  It is granted to the extent it seeks dismissal of Plaintiffs' claim for injunctive relief as to all future Department of Justice grants, and it is denied in all other respects.

3) This matter is remanded to United States Magistrate Judge Blewitt for further proceedings.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**