IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLARK MOELLER and               :
JANE MOELLER, et al.,           :
                                :    CIVIL ACTION NO. **3:CV-05-0334**
                                :
        Plaintiffs              :    (Judge Munley)
                                :
        v.                      :    (Magistrate Judge Blewitt)
                                :
BRADFORD COUNTY, et al.,        :
                                :
                                :
        Defendants              :

## REPORT AND RECOMMENDATION

### I. Background.

The Plaintiffs, Clark and Jane Moeller, Jeffery Gonzalez, Laura Blain, Chris Schwenke and Tim Thurston, all residents of Bradford County, Pennsylvania, filed this action, through counsel for Americans United for Separation of Church and State and Pennsylvania American Civil Liberties Union, on February 17, 2005, seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201, *et seq.* (Doc. 1). The named Defendants are Bradford County; Carl J. Anderson, (former) Executor Director of Pennsylvania Commission on Crime and Delinquency ("PCCD"); Alberto Gonzales, United States Attorney General; and The Firm Foundation of America, d/b/a/ The Firm Foundation of Bradford County ("FF"). Presently ripe for disposition is the November 29, 2005 Motion for Judgment on the Pleadings of Defendant Bradford County ("BC"). **(Doc. 101).**[1]

---

[1]By separate Order, we have directed Defendant Gonzales and Defendant FF to file their Answers to the remaining portions of the Complaint against them, Doc. 112.

On February 10, 2006, after BC filed its stated Motion, the District Court issued a Memorandum and Order in which it granted Defendant Firm Foundation's Motion to Dismiss to the extent that it dismissed Plaintiffs' state Constitutional claims and Plaintiff Thurtson's claims for injunctive and declaratory relief. (Doc. 111).[2] The District Court also granted Defendant Gonzales' Motion to Dismiss Plaintiff's claim for injunctive relief with respect to all future DOJ grants. (Id.). The Court denied the Motions to Dismiss in all other respects.[3]

## II. Standards.

### A. Motion for Judgment on the Pleadings

Both parties largely agree upon the applicable standard which governs a Motion for Judgment on the Pleadings. (Doc. 104, p. 7 & Doc. 108, pp. 7-8). We find that the parties have cited the proper standard governing the instant Motion.

A Motion for Judgment on the Pleadings may not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Corestates Bank, N.A. v. Huls American, Inc.*, 176 F. 3d 187, 193 (3d Cir. 1999).[4]

---

[2]*See* 2006 WL 319288 (M.D. Pa.).

[3]Defendants Bradford County and the Current Acting Director of PCCD (formerly Defendant Anderson) filed their Answers to Plaintiffs' Complaint (Docs. 19 & 22, respectively). Previously, we directed the Clerk of Court to substitute Lavery as a Defendant in place of Anderson. (Doc. 88). The answers of Defendants Gonzales and FF are due March 2, 2006. (Doc. 112).

[4]Fed.R.Civ.P. 12(c) provides as follows:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.

The Court uses the same standards as a Motion to Dismiss under Rule 12(b)(6) to judge a Motion on the Pleadings. *See Werwinski v. Ford Motor Co.*, 2000 WL 1201576 *1 (E. D. Pa.). In considering whether a pleading states an actionable claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### B. Section 1983

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[5] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,*

---

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

[5]Plaintiffs allege in their pleading that Defendant BC is a Pennsylvania municipality. (Doc. 1, ¶ 13.). This is sufficient to show that Defendant BC is a state agent.

*supra.* It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.*

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short and plain statement setting forth (1) the grounds upon which the court's jurisdiction rests; (2) the claim showing that the pleader is entitled to relief; and (3) a demand for judgment for the relief sought by the pleader.

Although Plaintiffs are correct (Doc. 108, p. 8) that, contrary to Defendant BC's implication (Doc. 104, p. 7), there is not a heightened pleading standard in civil rights cases,[6] a civil rights complaint in order to comply with Rule 8 must contain at least a modicum of factual specificity, identifying the particular conduct of the defendant that is alleged to have harmed the plaintiff, so

---

[6] In *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163 (1993), the United States Supreme Court held that it was improper to apply heightened pleading standards to § 1983 actions. The Court noted that a § 1983 complaint need only comply "with the liberal system of 'notice pleading' set up by the Federal Rules." *Id* at 167.

that the court can determine that the complaint is not frivolous and a defendant has adequate

notice to frame an answer. *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 785 F.2d 65, 68 (3d

Cir. 1986). A civil rights complaint complies with this standard if it alleges the conduct violating the

plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials.

With these principles in mind, Plaintiffs' allegations with respect to Defendant BC will be

discussed.

## III. Allegations of Complaint.

The Moeller Plaintiffs, Plaintiff Gonzalez, Plaintiff Blain and Plaintiff Schwenke are residents

of Bradford County and taxpayers.[7] These Plaintiffs object to and are offended by the use of their

tax money to finance the FF program at the Bradford County Prison ("BCP") and its "promulgation

---

[7]Insofar as Defendant BC states in its Brief that the undersigned's previous discussion of
Plaintiff's allegations contained "misleading mischaracterizations" and should be disregarded by
the District Court, Doc. 104, p. 6, the District Court found no merit to this contention.  The
District Court noted in its February 10, 2006 Memorandum, Doc. 111, p. 6, n. 2, in addressing
a similar statement made by BC in its Objections to our prior Report and Recommendation, as
follows:

> The Firm Foundation and Bradford County also objected to Magistrate
> Judge Blewitt's characterization of the Firm Foundation as having a
> primary mission to convert inmates.  Not only is this ultimately
> irrelevant to the disposition of the issues at this stage, Magistrate
> Judge Blewitt accurately portrays the Complaint.  It specifically
> states that the Firm Foundation proselytized. (Compl. ¶ 12).
> "Proselytize: to induce someone to convert to one's faith."
> MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 937
> (10th ed. 1999).  The complaint also specifically states, "Program
> personnel make statements to inmates that pressure inmates to
> express professions of faith and adopt the specific Christian beliefs
> of the Firm Foundation" (Compl. ¶ 29).  Thus, Magistrate Judge
> Blewitt accurately characterized the Complaint's allegations.

of its religious beliefs." (Doc. 1, p. 3). Plaintiff Thurston is a resident of the County and a former inmate of BCP. During his incarceration, Plaintiff Thurston participated in the FF program in order to obtain vocational training. It is not alleged that Plaintiff Thurston was also a taxpayer. (Id., p. 4).[8]

The FF receives almost all of its funding (i.e. more than 90%) from the federal, state and local governments to operate a vocational training program for inmates in BCP. However, in addition to providing job skills, it is alleged that FF's program devotes a significant amount of its program time conducting religious discussions, lectures and prayer with the inmates. (Id., pp. 1, 11). The FF does not segregate government funds for secular uses, and thus, it is alleged that it uses governmental funds for its religious activity and instruction. (Id.). It is also alleged that government funds are used to pay the salaries of FF employees, who are required to satisfy religious testing, and thus Plaintiffs claim that the government is financing religious discrimination in employment. (Id.). Plaintiffs therefore contend that the government's financial support of the FF program violates the Establishment Clause of the First Amendment, as well as the religious freedom provisions of the Pennsylvania Constitution. (Id., p. 2). As relief, Plaintiffs seek, in part, an injunction precluding the Defendants from any further funding of the FF's program at BCP as long as the program includes any religious activity, including the alleged indoctrination of inmates in its religious views. Plaintiffs also seek a declaratory judgment that the Defendants violated the First Amendment of the United States Constitution and the Pennsylvania Constitution, as well as nominal damages. (Id., pp. 26-29).

---

[8]We have noted in our previous Reports and Recommendations that, as taxpayers, Plaintiffs Moellers, Gonzalez, Blain and Shwenke have standing to bring this action. See Davidson v. Stanley, 2003 WL 21785151 * 7 (D. N.H.) ("state taxpayers have standing to challenge the expenditures of state funds as violative of the Establishment Clause." (citations omitted).

Further, Plaintiffs seek disgorgement of all governmental funds FF ever received or to require FF to pay back all governmental funds it used to support religious activities. Plaintiffs request attorneys' fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2412. (*Id.*, p. 30).[9]

Plaintiffs allege that Bradford County has delegated to FF the performance of a traditionally public function, namely the rehabilitation and supervision of inmates, and thus FF is a state actor for purposes of § 1983. (*Id.*, p. 8).[10]

Plaintiffs aver that Bradford County directly provided funding to FF and that the PCCD Director gave Bradford County the funds, which in turn were provided to FF. Defendant Gonzales is named as a Defendant since the funds which FF received from the County were provided to Pennsylvania from a federal grant distributed by the Department of Justice ("DOJ"). (*Id.*, pp. 5-7). The FF is a "faith based, non-profit organization" which has a contract with Bradford County to operate its program at BCP. (*Id.*). The FF is a prison ministry that provides vocational training to inmates at BCP, and inmates in the program work on construction sites throughout the County, including a church. While outside of the Prison at construction project sites, the FF has full control over and supervision of the inmates in the program. It is alleged that a large amount of the inmates' time in the FF program is devoted to Christian religious discussions, lectures and prayer, and that

---

[9]As we have noted, the District Court has discretion in a § 1983 action to award "the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988; *Beam v. Downey*. Appeal No. 04-3424, 3d Cir. October 12, 2005 (Non-Precedential).

[10]The District Court has agreed with our prior Report and Recommendation, and has found that the Complaint sufficiently alleged that FF was a state actor. (Doc. 111, pp. 6-7).

inmates are given Bibles and other religious literature. (*Id.*, pp. 12-13). Plaintiffs aver that the FF uses the government money which it receives, including their tax money, to fund the religious activities they provide inmates at BCP. Plaintiffs claim that Defendants have not established safeguards, and do not monitor FF's spending, to prevent FF from using government money to pay for its religious activities. (*Id.*, p. 16-17).[11]

Plaintiffs allege that the direct payment of government funds by Bradford County to FF, a religious organization, violates the Establishment Clause of the United States Constitution and the Pennsylvania Constitution. (*Id.*). Plaintiffs assert a violation of their civil rights under 42 U.S.C. § 1983, Count One, and a violation of Section 3, Article I of the Pennsylvania Constitution, Count Two. (*Id.*, pp. 21-25). Specifically, Plaintiffs claim that the County and FF have acted in concert for the purpose of "maintaining the unconstitutional use of public funds to support religion and religious discrimination, in violation of 42 U.S.C. § 1983." (*Id.*, p. 24).

In Count III, Plaintiffs allege a violation of Section 29, Article III of the Pennsylvania Constitution. (*Id.*, pp. 25-26).[12]

**IV. Discussion.**

In its present Motion, BC argues that Plaintiffs have failed to sufficiently allege an Establishment Clause claim against it, and that Plaintiffs do not have standing to assert such a claim.

---

[11] Plaintiffs' Brief also accurately states the allegations contained in their Complaint, Doc. 108, pp. 3-7.

[12] As discussed, the District Court has dismissed Plaintiffs' claims under the Pennsylvania Constitution with respect to Defendant FF's Motion to Dismiss. (Doc. 111).

(Doc. 101, p.2 & Doc. 104, p. vi). BC also argues that Plaintiffs have not asserted a cognizable employment discrimination claim against it. BC contends that Plaintiff Thurtson's claims for injunctive and declaratory relief should be dismissed as moot since Thurston is no longer incarcerated at BCP and no longer participates in FF's program at the prison. Finally, BC maintains that this Court should decline to exercise pendent jurisdiction over Plaintiffs' claims under the Pennsylvania Constitution since it is not settled whether Plaintiffs have a private right of action under the Pennsylvania Constitution. (Id.).

To the extent BC argues that the Court should not exercise supplemental jurisdiction over Plaintiffs' claims under the Pennsylvania Constitution since the law regarding a right of action to damages under the Pennsylvania Constitution is unsettled, we have found that this claim of Plaintiffs should be dismissed with respect to Defendant FF's Motion to Dismiss. As stated, on February 10, 2006, the District Court dismissed Plaintiffs' state Constitutional claims. Also, insofar as BC argues that Plaintiff Thurston's claims for injunctive and declaratory relief should be dismissed, the District Court has already ruled that Plaintiff Thurston's claim for injunctive and declaratory relief were dismissed with regard to FF's Motion. (Doc. 111). Thus, we find that the District Court has decided these two issues in considering Defendant FF's Motion. Accordingly, we shall not discuss these issues again, and shall recommend that Defendant BC's Motion should be granted to the extent that it seeks to dismiss the Plaintiffs' claims under the Pennsylvania Constitution and Plaintiff Thurston's claims for injunctive and declaratory relief.[13]

---

[13]The very recent case of *Farrell v. County of Montgomery*, 2006 WL 166519 (E.D. Pa.), also supports the dismissal of our Plaintiffs' claims under the Pennsylvania Constitution. In *Farrell*, the Court stated:

We are thus left to consider Defendant BC's first two stated arguments.[14]

BC contends that Plaintiffs do not have standing to assert an Establishment Clause claim against it. (Doc. 104, p. 8). BC also argues that Plaintiffs fail to state any claim for violation of the

> Pennsylvania has no statutory equivalent to 42 U.S.C. § 1983, which provides a private cause of action for a federal constitutional violation. *Morris,* 2005 WL 950615, at *43; *Kaucher,* 2005 WL 283628, at * 31. Although there is some support for an action seeking injunctive relief to enforce the equal rights provisions of the Pennsylvania Constitution, "there has been no such holding as to an action for damages." *Kaucher,* 2005 WL 283628, at * 31.

*Id.* * 3.

The *Farrell* Court concluded that:

> Plaintiffs are seeking damages for violation of the Pennsylvania Constitution and their claim falls squarely within the persuasive reasoning of *Pollarine, Morris,* and *Kaucher.* Therefore, Plaintiffs' state constitutional claim fails as a matter of law, and Count III of the amended complaint will be dismissed with prejudice.

*Id.*

Also recently, the Pennsylvania Commonwealth Court found that the Pennsylvania Constitution does not create a private right of action. The Commonwealth Court held that "there is no separate cause of action for monetary damages for the use of excessive force in violation of Article I, Section 8 of the Pennsylvania Constitution." (*See Jones v. City of Phila.*, PA Cmwlth. Ct. 1-25-06, slip op. at 45).

---

[14]Defendant FF has joined in Defendant BC's present Motion. Doc. 102. As mentioned, the Motion to Dismiss of Defendant FF was ruled upon by the District Court following FF's joinder in the present Motion. Doc. 111. Defendant Gonzales takes no position on Defendant BC's Motion. Doc. 109. The District Court has also now ruled upon Defendant Gonzales' Motion to Dismiss. Defendant FF and Defendant Gonzales have been ordered to answer Plaintiffs' Complaint.

Establishment Clause against it.   Finally, BC maintains that Plaintiffs fail to state a cognizable employment discrimination claim against it.

### A. Standing of Plaintiffs

Defendant BC states that Plaintiffs have not alleged any individual injury in fact, and they have not alleged a casual link between an injury and any actions of it. (Doc. 104, p. 8).  Defendant BC requests that all of Plaintiffs' claims against it be dismissed based on lack of standing.  (Id.).  As Plaintiffs correctly note (Doc. 108, p. 9, n. 3), in our previous Report and Recommendation in which we found that they had standing as taxpayers and can recover nominal damages, we recommended that Defendant FF's Motion be denied in this respect.  The District Court adopted our Report and Recommendation in toto with respect to Defendant FF's Motion.  Doc. 111.

As we stated in our prior Report and Recommendation, Doc. 89, (FF's Motion):

> As stated above, Plaintiffs seek nominal damages for the alleged violation of their rights under the Establishment Clause. (Doc. 1, pp. 28-29).[FN10]  Defendant FF argues that Plaintiffs lack standing to receive nominal damages since, as taxpayers, they have not suffered an injury as a result of the expenditure of public funds in a manner which allegedly violated the Establishment Clause, *i.e.* using governmental money it received for its religious activities that were part of its program.  Defendant states that the misuse of public money is a generalized injury and not an injury that was personal and individual to our Plaintiffs so as to confer standing upon them to be awarded damages. As the *Davidson* Court stated, "[i]n order to establish state taxpayer standing, plaintiffs must show that the challenged activity involves 'a measurable appropriation' or loss of revenue, and 'a direct dollars-and-cents injury' to themselves."  2003 WL 21785151 at *7 (citations omitted).  Plaintiffs' Complaint alleges that BCP's relationship with Defendant FF involves a significant amount of appropriation and that their tax dollars have supported FF"s program. (Doc. 1, pp. 11, 16).

11

In *Lee v. Weisman*, 505 U.S. 577, 587 (1992), the Supreme Court, in considering the minimum requirements of the Establishment Clause, stated: "It is beyond dispute that, at minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984) (court found that a high school commencement ceremony which included a prayer violated the Establishment Clause since students were psychologically coerced to attend the ceremony). It is clear that a Plaintiff, who wins only nominal damages in his § 1983 action, is still entitled to attorneys' fees as a prevailing party under the Civil Rights Attorney Fees Award Act, 42 U.S.C. § 1988(b). *See Farrar v. Hobby*, 506 U.S. 103, 112 (1987). [FN11]

In our case, it is alleged that FF had the only vocational training program available to inmates at BCP. If an inmate wanted to receive vocational training, he thus had to enroll in FF's program. This certainly amounts to a degree of coercion exerted on the inmate to sign up for the program if he wanted to rehabilitate himself and receive job skills and training. It is also alleged that FF's program coerced, either directly or psychologically, enrolled inmates to participate in its religious activities and exercises, and that the primary purpose of the program was to advance Christian religious beliefs. *See Nusbaum*, 210 F. Supp. 2d 788 ("When prison officials coerce an inmate to attend a program teaching religion, the prison officials are certainly endorsing religion over non-religion and are not remaining neutral on matters of religion."). In our case, as stated, while no direct coercion to participate in FF's program is alleged against BCP officials, we have found that Plaintiffs alleged a degree of psychologically coercion. While inmates do not mandatorily have to participate in FF's program (unlike in the *Nusbaum* case), if they chose to learn a vocational skill, they must enroll in the program which allegedly espouses religion.[FN 12]

As in *Lynch,* where the Court found psychological coercion in students to attend their high school commencement exercises although it was not mandatory, we too find, at this point of the case, such coercion has been alleged. It is alleged that inmates at BCP had no choice but to enroll in FF's program if they wanted vocational training and to learn job skills. Until discovery is complete, it is not clear

at this stage of the proceeding as to the degree of psychologically coercion which is present in our case.[FN 13]. Nor is it clear if an inmate who participated in the FF's program was considered more rehabilitated than an inmate who did not, thus bettering his chances for an earlier parole than the inmate who did not participate.[FN14].

We agree with Plaintiffs that courts have held that nominal damages may be awarded in a case asserting a violation of the Establishment Clause. (Doc. 55, pp. 23-24). *See Ward v. Santa Fe Indep. Sch. Dist.*, 393 F. 3d 599, 602 (5th Cir. 2004); *Allah v. Al-Hafeez*, 226 F. 3d 247, 251-252 (3d Cir. 2000) (PLRA, 42 U.S.C. § 1997e(e), does not preclude a claim for nominal damages to redress violations of constitutional rights); *Mitchell v. Horn*, 318 F. 3d 523 (3d Cir. 2003); *Pryer v. C.O. 3 Slavic*, 251 F. 3d 448 (3d Cir. 2001) (nominal damages may be awarded when a constitutional violation does not cause actual injury). Thus, we shall recommend that Defendant FF's motion to dismiss Plaintiffs' claim for nominal damages be denied.[FN15].

[FN10] Since we are recommending that Plaintiffs' claims under the Pennsylvania Constitution be dismissed, we also recommend that their corresponding request for relief for nominal damages for such claims be dismissed. Doc. 1, p. 28.

[FN11] There is no dispute that Plaintiffs (except for Plaintiff Thurston) are entitled to injunctive relief if they prevail on their § 1983 claim.

[FN12] We recognize that convicted prisoners generally have no constitutional right to prison vocational training programs. *See Coffey v. Ingram*, WL 82855, *1 (E.D. Pa. 1988); *Greist v. Norristown State Hosp.*, 1997 WL 661097 (E.D. Pa.).

[FN13] Indeed, the Complaint alleges that Plaintiff Thurston, while an inmate at BCP, entered FF's program and that the "Program personnel proselytized him in their religious beliefs without his consent, and they pressured him to engage in prayer." Further, it is alleged that Thurston "felt coerced by jail officials and Firm Foundation staff into submitting to religious proselytization and attending prayer sessions." (Doc. 1, p. 5).

[FN14] We note again that it is alleged that there was not an alternative vocational training program available for BCP inmates that was void of any religious content.

[FN15] As discussed below, we also find that Plaintiff Thurston's claim for nominal damages survives, despite finding that his claims for injunctive and declaratory relief are moot.

(Doc. 89, pp. 16 - 19).

Moreover, the District Court, in its recent February 10, 2006 Memorandum, stated as follows:

Moreover, that Plaintiffs rely on their position as taxpayers as the basis for standing does not preclude recovery of nominal damages. "[N]ominal damages are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury." Memphis Community School District v. Stachura, 477 U.S. 299, 308 n. 11 (1986) (citing Carey, 435 U.S. at 266).

Common-law courts traditionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed.

Carey, 435 U.S. at 266.

Thus, the availability of nominal damages is not based on the severity of the injury, but is based on the importance of the observance of the right in question. We need not detail the importance of the Establishment Clause, as this is not in debate. Thus, we find that Magistrate Judge Blewitt did not err in holding that Plaintiffs can recover nominal damages.

(Doc. 111, pp. 12-13).

14

The District Court further stated:

> "[W]hen standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." Id. at 99-100. The particular issue sought to be adjudicated in this case is whether Gonzalez's conduct violated the Establishment Clause, and thus we must determine whether Plaintiffs are the proper parties to raise this issue.
>
> Gonzales argues that the Plaintiffs are not sufficiently adverse to the DOJ because the DOJ played no part in the decision to fund the Firm Foundation. Rather, the money passed from the DOJ through two state agencies before a state agency provided the money to the Firm Foundation. We find that Plaintiffs' injuries are sufficiently traceable to the DOJ, and thus Plaintiffs have standing.
>
> In Flast v. Cohen, the United States Supreme Court established that federal taxpayers have standing to challenge exercises of the taxing and spending power under Article I section 8 of the United States Constitution that violate the Establishment Clause. 392 U.S. 83, 105-06 (1968). A group of taxpayers challenged expenditures of federal funds under Titles I and II of the Elementary and Secondary Education Act of 1965 (ESEA). Id. at 85. They sued the executive branch officials charged with administering the funds in their official capacities, including the Secretary of Health, Education and Welfare. Id. The ESEA provided educational assistance to low income families, and distributed the funds through federal payments to state educational agencies, which passed the payments to local educational agencies. Id. at 86. The court noted that the crux of the standing issue was whether the parties where (sic) sufficiently adverse, and then enumerated the circumstances where a taxpayer has standing. Id. at 101.
>
> > A tax payer will be a proper party to allege the unconstitutionality only of exercises of constitutional power under the taxing and spending clause of Art. I § 8 of the constitution . . . Secondly, the taxpayer must establish that the challenged enactment exceeds specific

15

> constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8.

Id.

Thus, the Court found that the plaintiffs had standing because they challenged an exercise of congressional power under Art. I § 8, and alleged "that the challenged expenditures violate the Establishment and Free Exercise Clauses." Id. Significantly, the Court found Plaintiffs had standing even though the defendants did not directly fund the religious activity, and the money flowed through intermediaries.

In Bowen v. Kendrick, the Court reaffirmed Flast and taxpayer standing to challenge government expenditures pursuant to Article I, section 8. 487 U.S. 589 (1988). A group of taxpayers sued the Secretary of Health and Human Services, challenging the Adolescent Family Life Act (AFLA) on its face and as-applied because religious groups carried out the programs. Id. at 597-98. The Court inquired whether the taxpayers had standing to bring their as-applied challenge under the Flast framework. Id. at 618. The government argued that the plaintiffs had no standing because the as-applied challenge did not attack the taxing and spending power under Article I § 8 because it challenged the executive branch's administration of funds. Id. at 619. The Court disagreed. "We do not think, however, that appellee's claim that AFLA funds are being used improperly by individual grantees is any less a challenge to congressional taxing and spending power simply because the funding authorized by Congress has flowed through and been administered by the Secretary." Id. Thus, the injury is the exercise of the taxing and spending power. Indeed, the Court found that the plaintiffs could establish an as-applied violation if they were able to show "aid is flowing to grantees that can be considered 'pervasively sectarian.'" Id. at 621 (emphasis added).

Recently, in Freedom from Religion Foundation v. Chao, a group of taxpayers complained that money appropriated by Congress under Article I section 8 was used by various executive branch agencies to fund conferences to promote the President's

"Faith-Based and Community Initiatives." [433] F.3d [989],
2006 WL 73404, at * 5 (7th Cir. Jan. 13, 2006). The complaint
alleged that the conferences were designed to promote
religious organizations over secular ones. Id. at *5. The complaint,
however, could not identify a specific congressional appropriation
or statute that earmarked the funds for the conferences. Id. Rather,
the conferences were entirely conceived of and run by the executive,
and the funds were obtained from appropriations for general
administrative expenses. Id. The court found this distinction
from Flash and Bowen irrelevant for the purposes of standing. Id.
It observed that the complaint alleged that "the conferences
are funded by money derived from appropriations, which means
from exercises of Congress' spending power rather than from, say,
voluntary donations from private citizens." Id. (emphasis added).
Thus, to establish standing, taxpayers need not "show that a
statute violated the establishment clause, all they had to show
was the a (sic) statute enacted pursuant to Congress' taxing
and spending powers under Art. I, section 8 had been
necessary for the violation to occur, it did not have to be
sufficient." Id. at * 4.

(Id., pp. 16-20).

The District Court concluded that Plaintiffs had standing as to Defendant Gonzales since

their injury was sufficiently traceable to this Defendant's conduct. (Doc. 111, p. 20). Based on our

prior Reports and Recommendations and the District Court's finding of Plaintiffs' standing as to

Defendant Gonzales, we find that Plaintiffs have standing to assert their Establishment Clause claim

as against Defendant BC. As with Defendant Gonzales, Plaintiffs' claim against Defendant BC

challenges its disbursement of government funds to FF. Consequently, it is asserted that

government funds were used to proselytize. As Plaintiffs argue (Doc. 108, pp. 10-11), their injury

with respect to BC, the use of Plaintiff's tax money, is directly traceable to BC. Therefore, we shall

recommend that Defendant BC's Motion, insofar as it seeks dismissal of Plaintiffs' Establishment

Clause claims due to their lack of standing, be denied.

17

### B. First Amendment Claim

In this case, Plaintiffs have named Defendant BC and FF as Defendants, the former a Pennsylvania municipality and the latter a private non-profit organization, with respect to FF's program at BCP in which it is alleged that a "significant portion of inmates' time ... is not spent on the learning of job skills, but on religious discussions, religious lectures, and prayer." (Doc. 1, p. 1). Plaintiffs allege that BC applied for a grant and a continuation grant to fund FF, and that FF received the grants in governmental funds. (Doc. 1, ¶ 21.-22.). It is alleged that BC and FF contracted for the payment of the grants. (Id.).

In Nusbaum v. Terrangi, 210 F. Supp. 2d 784, 787 (E.D. VA 2002), the Court stated "[t]he Establishment Clause provides that 'Congress shall make no law respecting an establishment of religion ....' U.S. Const. Amend. I. It applies to state governments through the Fourteenth Amendment." citing Board of Educ. v. Grument, 512 U.S. 687, 690 (1994).

Plaintiffs allege that Defendant FF receives most of its funding from the government to operate its vocational training program for inmates in BCP, which is a program at the prison providing vocational training to the inmates. Plaintiffs allege that when Plaintiff Thurston entered FF's program at BCP, "program personnel proselytized him in their religious beliefs ... and they pressured him to engage in prayer." (Doc. 1, p. 5, ¶ 12. ). It is alleged that BC has paid FF federal, state and county funds, and that virtually all of FF's funding comes from government grants. (Id., ¶'s 13., 18.). It is alleged that BC also significantly renders aid to FF's program by providing FF with its inmates who participate in the program.

18

Plaintiffs allege that a contract existed between Bradford County and FF to operate its (FF's) program at BCP. Plaintiffs allege that FF is the only program available to inmates at BCP that provides vocational training or teaches employment skills to inmates. (*Id.*, ¶ 46.). It is also alleged that FF discriminates by only employing Christians. Plaintiffs allege that the County has delegated to FF its authority over the supervision and rehabilitation of inmates in FF's program when they are working outside of the prison. (*Id.*, pp. 22-23). Plaintiffs also claim that, despite being aware that FF is providing religious instruction and activity to inmates, the County and FF have conspired to continue the unconstitutional use of government funds to promote religion and religious discrimination. (*Id.*, pp. 23-24). As stated, Defendant BC has moved for judgment on the pleadings with respect to the Establishment Clause claim against it pursuant to Fed. R. Civ. P. 12 (c).

It is alleged that FF receives almost all of its funding from governmental sources, local, state and federal. It is alleged that the BCP has delegated its authority and supervision over its inmates to FF while they are outside of the prison working on construction projects and that supervision of inmates is the state's traditional public function. Plaintiffs claim that the County was well aware that FF's program indoctrinated the inmate enrollees to Christianity. Further, Plaintiffs aver that Bradford County and FF conspired to continue to use governmental funds to promote FF's program even though the County was made aware of the strong religious undertones of the program. They allege an agreement between FF and BC to unlawfully coerce inmates to participate in religious activities if they enroll in FF's vocational training program and use government funds to do so, in violation of § 1983.

19

The District Court, in its February 10, 2006 Memorandum, found that Plaintiffs had sufficiently stated an Establishment Clause violation. (Doc. 111, p. 9). Specifically, the Court stated as follows:

> Bradford and the Firm Foundation argue that the vocational program in the prison is not sufficiently coercive to support this claim. They explain that the prison does not require prisoners to participate in the Firm Foundation's program, and thus even though the prison offers no alternative vocational or education training, it is not sufficiently coercive to violate the Establishment Clause. Magistrate Judge Blewitt relied on Lee v. Weisman, 505 U.S. 577 (1992) in finding that Plaintiffs allege that the program was sufficiently coercive. Bradford distinguishes Lee because the plaintiffs there were high school students, who are particularly impressionable and vulnerable to subtle coercive pressures, whereas the present case deals with adults.

> This distinction is not fatal to Plaintiffs' claim. "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend 1. The Establishment Clause requires that the "government may not promote or affiliate itself with any religious doctrine or organization, may not discriminate against persons on the basis of their religious beliefs and practices, may not delegate a governmental power to a religious institution, and may not involve itself too deeply in such an institution's affairs." Allegheny v. ACLU, Greater Pittsburgh Chapter, 492 U.S. 573, 590-91 (1988). In Lee, the unique impressionability of children was relevant to the coercive effect of government action in question. 505 U.S. at 581. There, the plaintiffs challenged a school policy that included prayer in the middle school and high school graduation ceremonies. Id. Although participation in the prayer was not required, the Court found that public and peer pressure in the school setting upon children and teenagers gave the prayer policy an unacceptable coercive effect. Id. at 593-94. Furthermore, the importance of the graduation ceremony to a youth rendered the option to skip the ceremony unavailable for all practical purposes. Id. at 594-95.

Lee, however, does not limit impermissible coercion to teenagers, but establishes "[c]oercion is impermissible when it takes the form of 'subtle coercive pressure' that interferes with an individual's 'real choice' about whether to participate in worship or prayer." Destefano v. Emergency Housing Group, Inc., 247 F.3d 397, 412 (2d Cir. 2001) (quoting Lee, 505 U.S. at 592). "The fulcrum of this inquiry, we think, is individual conscience and free will." Id. In Destefano, the state provided funding to an alcohol detoxification and treatment facility. Id. at 402. The treatment program included Alcoholics Anonymous meetings, which involved prayer in treatment. Id. at 402-03. The court found that the level of coercion presented a triable issue of fact, even though patients were not forced to seek treatment at all. Id. at 413.

> The 'choice' between forgoing the alcohol treatment provided by the State and coping with one's alcoholism without professional assistance or with assistance at substantial expense or inconvenience, on the one hand, and availing oneself of that treatment and thereby 'facing a personally offensive religious ritual,' on the other, may be no choice at all.

Id. (quoting Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 312 (2000)).

Similarly, the choice between foregoing educational and vocational training in prison or enduring the Firm Foundation's efforts to proselytize may be no choice at all. Thus, Plaintiffs have stated facts upon which relief may be granted, and we will overrule the objections and adopt this portion of the Report and Recommendation. [FN 6].

[FN6] Additionally, a coercive effect may be sufficient to establish an Establishment Clause violation, but it is not necessary. Lee, 505 U.S. at 604 (Blackmun, J. concurring) ("Although our precedents make clear that proof of government coercion is not necessary to prove an Establishment Clause violation, it is sufficient. Government pressure to participate in a religious activity is an obvious indication that the government is endorsing or promoting

21

> religion."). Thus, even if the coercive effect on prisoners
> is not sufficient, Plaintiffs may be able to prove an
> Establishment Clause violation through other means.

(*Id.*, pp. 9-12).

The District Court has found that Plaintiffs have alleged that FF's program was sufficiently coercive. (*Id.*). Thus, Defendant BC's argument contained on pages 9-15 of its Brief, Doc. 104, in which it contends that Plaintiffs' allegations of coercion do not suffice to state an Establishment Clause claim, have been already considered and rejected by the District Court. We shall not reiterate them herein.

Defendant BC also argues that Plaintiffs have failed to state an Establishment Clause violation with respect to it based on theories beside coercion. (Doc. 104, p. 16). Defendant BC states that Plaintiffs have not stated an Establishment Clause violation under the government aid cases, that this case does no involve any risk of entanglement, that Plaintiffs have not stated an Establishment Clause violation under the endorsement test, that Plaintiffs' allegations do not support a claim that BC is financing religious activity, and that Plaintiffs' claim that BC did not properly monitor FF's use of funds does not state an Establishment Clause violation since it is not required under this Clause. (Doc. 104, pp. 16-32).

We shall not address these other arguments of BC since we have found, based on the District Court's decision, that Plaintiffs have sufficiently stated an Establishment Clause violation against BC and FF. The Court also overruled the objections of BC and FF to our finding that Plaintiffs stated such a violation. The Court did not find merit to BC's and FF's objection that FF's program at BCP is not sufficiently coercive to support such a claim. The Court concluded that "the

22

choice between foregoing educational and vocational training in prison or enduring the FF's efforts to proselytize may be no choice at all. Thus, Plaintiffs have stated facts upon which relief may be granted [with respect to their Establishment Clause claim] ... . " (Doc. 111, p 11). The Court also noted that "even if the coercive effect on prisoners is not sufficient, Plaintiffs may be able to prove an Establishment Clause violation through other means." (*Id.*, p. 12, n. 6). Since the District Court has found that Plaintiffs have sufficiently alleged an Establishment Clause violation as to Defendants BC and FF, in that they have alleged that the vocational program at BCP is coercive enough to support this claim, we see no need to discuss BC's other arguments with respect to why it asserts that Plaintiffs have failed to allege an Establishment Clause violation for purposes of its present Motion.

Therefore, in light of the District Court's determination that Plaintiffs have sufficiently stated an Establishment Clause violation in their Complaint against Defendants FF and BC based on coercion, we see no need to discuss, at this stage of the case when presented with a Motion for Judgment on the Pleadings, whether Plaintiffs have also stated such a violation on the basis of the other theories identified by BC in its Brief.

### C. Employment Discrimination Claim Against BC

As its final argument, Defendant BC contends that Plaintiffs' allegations do not support their claim that BC is financing religious discrimination in employment. (Doc. 104, pp. 32-33).

As discussed, Plaintiffs allege that FF discriminates in hiring on the basis of religion by employing only Christians, and aver that its employees must meet a religious test in order to be hired. (Doc. 1, pp. 14-15, ¶ 35., 38.). Plaintiffs also cite to FF's job description in their Complaint

23

quoting to the effect that an employee will be an example of a believer in Christ and Christian life. (Id., ¶ 36.). Plaintiffs allege that a document promoting FF's program states that its staff are examples of Christ. (Id., ¶ 37.). It is also alleged that government funds are used to pay the salaries of FF employees, who are required to satisfy religious testing, and thus Plaintiffs claim that the government is financing invidious religious discrimination in employment. (Id., pp. 1, 11, 15).

Defendant BC argues that federal law regulating the monies faith based organizations receive, as well as DOJ formula grants, deal with the employment practices which Plaintiffs challenge herein, and the Title VII exemption created for religious organizations is preserved. (Doc. 104, pp. 32-33). Defendant BC relies upon Title VII exemption provisions of 28 C.F.R. § 38.2 (f) and § 33.53. Defendant also states that Plaintiffs' religious discrimination in employment claim is not statutory. Plaintiffs note that, pursuant to the language of the statue which governs the distribution of funds at issue herein, i.e. 42 U.S.C. § 3789d(c)(1), religious discrimination in employment is prohibited.[15] Plaintiffs do not dispute BC's statement that their instant claim is not statutory. (Doc. 108, p. 23, n. 12). Plaintiffs also point out that they have not raised a Title VII claim in this case. Rather, Plaintiffs state that their claim, i.e. a Constitutional claim, is that the Establishment Clause does not allow government funding of religious discrimination in employment.

---

[15] 42 U.S.C. § 3789d(c)(1) provides:

(1) No person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any programs or activity funded in whole or in part with funds made available under this chapter.

24

We agree with Plaintiffs that, based on their cited cases (Doc. 108, pp. 24-26), the Establishment Clause prohibits religious discrimination in public employment, and thus we find that their religious discrimination employment claims based on the Establishment Clause, should proceed. (Doc. 1, pp. 14-15).

As the District Court in its February 10, 2006 Memorandum, 2006 WL 319288 (M.D. Pa.), stated, the distribution of government funds will violate the Establishment Clause if the government "promote[s] or affiliate[s] itself with any religious beliefs and practices" and that the government "may not discriminate against persons on the basis of their religious beliefs and practices." (Doc. 111, p. 10) (citation omitted). This is precisely what Plaintiffs are alleging in this case, *i.e.* the government (including Defendant BC) has distributed public funds to FF which promotes a religious doctrine amongst BCP inmates in its program (Christianity), and which discriminates against persons that it hires to work in its program on the basis of their religious beliefs.

Plaintiffs cite to *Venters v. City of Delphi*, 123 F. 3d 956, 970 (7th cit. 1997). In *Venters*, the Court stated "[p]ublic employment may not be conditioned on one's willingness to subscribe to particular religious principles or to any religious belief at all." The District Court has held that Plaintiffs have sufficiently alleged that FF was a state actor. (Doc. 111, p. 9). Thus, Plaintiffs have sufficiently established that employment with FF was public employment, and they have alleged that FF conditioned employment to work at its program on beliefs in Christianity. Therefore, Plaintiffs' claim sufficiently states that this conduct violated the Establishment Clause.[16]

---

[16] Plaintiffs essentially allege that FF, a state actor, bases its hiring on an unconstitutional employment criterion, *i.e.* a person would not be hired as an employee if they were not a Christian. (Doc. 1, p. 14, ¶ 35.).

We agree with Plaintiffs (Doc. 108, p. 26) that *Lown v. Salvation Army, Inc.*, 393 F. 3d 223, 246 (S.D. N.Y. 2005), relied upon by Defendant BC, is not determinative of their claim. In *Lown*, the Court stated that Title VII generally prohibits religious discrimination in employment, but § 702 thereof, has an exemption for religious organizations. However, as stated, Plaintiffs do not base their religious discrimination claim on Title VII; rather, they base it on the Establishment Clause. Plaintiffs' religious discrimination in employment claim, in which they allege that government funds are used to pay for FF's employees and that FF uses hiring practices which discriminate on the basis of religion, is grounded on the Establishment Clause. As stated, public employment cannot be based on a person's agreement to adhere to a particular religious belief. Such a requirement would violate the Establishment Clause. Therefore, we shall recommend that Defendant BC's Motion with respect to Plaintiffs' religious discrimination in employment claim be denied.

## V. Recommendation.

Based on the foregoing, it is respectfully recommended that the BC Defendant's Motion for Judgment on the Pleadings **(Doc. 101)** be granted in part and be denied in part. It is recommended that Defendant's Motion be granted with respect to Plaintiffs' claims under the Pennsylvania Constitution (Counts Two and Three).[17] It is also recommended that Defendant's Motion as to the mootness of Plaintiff Thurston's claims for declaratory judgment and injunctive relief be granted. Further, it is recommended that Defendant's Motion be denied with respect to Plaintiffs' § 1983

---

[17]Based on the District Court's February 10, 2006 Memorandum (Doc. 111), it is recommended that Plaintiffs' claims under the Pennsylvania Constitution (Counts Two and Three) as to all Defendants be dismissed.

claim (Count One), violation of the Establishment Clause.  It is recommended that Defendant's

Motion be denied with respect to Plaintiffs' religious employment discrimination claim under the

Establishment Clause.  It is also recommended that this case be remanded to  the undersigned for

further proceedings, including the scheduling of a Joint Case Management Conference and setting

deadlines for discovery, etc.

                              s/ Thomas M. Blewitt
                              THOMAS M. BLEWITT
                              United States Magistrate Judge

Dated: February 24, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLARK MOELLER and
JANE MOELLER, et al.,                  :

                                       :   CIVIL ACTION NO. **3:CV-05-0334**

           Plaintiffs          :   (Judge Munley)

           v.                  :   (Magistrate Judge Blewitt)

BRADFORD COUNTY, et al.,                :

           Defendants           :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 24, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

28

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                     s/ Thomas M. Blewitt

                                     **THOMAS M. BLEWITT**

                                     **United States Magistrate Judge**


**Dated: February 24, 2006**